## THE STATE, Appellant, v. STEWART.

### Division Two, March 6, 1906.

1. **BIGAMY:. Marriage Outside State: Statute Constitutional.** The statute (sec. 2169, R. S. 1899), punishing the continued cohabitation in this State under a bigamous and criminal marriage contracted without the State, which would be punishable in this State if contracted or solemnized within this State, is leveled at an offense against public immorality committed in this State, and is a valid and constitutional statute.

2. ———: ———: ———: **Not Denominated a Felony.** The fact that the statute denominates the offense "bigamy" instead of a "felony" does not affect its constitutionality. It was not unconstitutional for the General Assembly to define continued cohabitation under a bigamous marriage as bigamy.

State v. Stewart.

3. ——: ——: ——: **Continued Cohabitation.** The crime is not complete because the bigamous marriage is contracted or solemnized in another State. The purpose of the statute is not to punish the offender for the void marriage, but it punishes him for a continuation in this State of cohabitation begun under a void marriage in another State.

4. ——: ——: ——: **Sufficiency of Indictment: Adultery.** An indictment which alleges that at the time of the second marriage in Illinois the defendant had a lawful wife living, naming her, that avers the unlawful second marriage in Illinois and charges that from a certain date to a certain date defendant did unlawfully and feloniously, in the the county where the indictment is found, abide and cohabit with the said second wife, is sufficient under the statute, and there is no merit in the claim that it simply charges adultery.

Appeal from St. Louis City Circuit Court.—*Hon. C. Orrick Bishop,* Judge.

REVERSED AND REMANDED.

*Herbert S. Hadley,* Attorney-General, *N. T. Gentry,* Assistant Attorney-General, and *Grant Gillespie* for the State.

Under section 2169, Revised Statutes 1899, it is the cohabitation within this State which constitutes the crime, if the second marriage was solemnized in another State, when one of the parties thereto had a husband or wife living, in any case where such second marriage would be punishable if contracted or solemnized within this State. The question then arises whether or not the Legislature has the power, in the protection of public morals, to punish a person for cohabiting with a bigamous wife or husband within this State, where the second marriage was solemnized beyond its jurisdiction. There is no doubt of the power of the Legislature, or of municipalities deriving their power from the Legislature, to make police regulations designed to promote the health and morals of the community. Laws to prohibit or regulate gambling, sales of intoxicating liquors,

houses of prostitution, and thus indirectly advance the morals and good order of society, are beyond question. St. Louis v. Fitz, 53 Mo. 582; State v. Whittaker, 160 Mo. 59; State v. Layton, 160 Mo. 474; State v. Thompson, 160 Mo. 333; State ex rel. v. Ashbrook, 154 Mo. 375. While the State cannot under the guise of the police power overthrow rights which the Constitution guarantees, yet the Legislature may do many things in the legitimate exercise of this power which, however injudicious they may seem, are not obnoxious to the objection of being beyond the scope of legislative action. State v. Addington, 77 Mo. 110. Section 2169 does not conflict with any express provision of the Constitution; unless it does, this court will not declare it void. St. Louis County Court v. Griswold, 58 Mo. 175; Phillips v. Railroad, 86 Mo. 540; Railroad v. Shambaugh, 106 Mo. 557; Deal v. Mississippi Co., 107 Mo. 464; State ex rel. v. Wofford, 121 Mo. 61; State ex rel. v. Yancy, 123 Mo. 391. No legislative enactment should be declared unconstitutional unless clearly so, and every reasonable intendment should be made to sustain it. State v. Hope, 100 Mo. 347; State ex rel. v. Jackson Co., 102 Mo. 531; State ex rel. v. Simmons Hdw. Co., 109 Mo. 118; Wells v. Railroad, 110 Mo. 286; Murnane v. St. Louis, 123 Mo. 479; State ex rel. v. Aloe, 152 Mo. 466. The burden is upon him who alleges that the act is unconstitutional to prove it beyond a reasonable doubt. State ex rel. v. Ransom, 73 Mo. 78; State ex rel. v. Laughlin, 75 Mo. 147; State v. Addington, 77 Mo. 110. When the courts are called upon to decide that an act of the Legislature violates the organic law, they begin with every presumption in favor of the validity of the statute. State v. Layton, 160 Mo. 474. The Federal Constitution has not shorn the States of their police power to prohibit or regulate unwholesome trades and occupations or to protect public morals. St. Louis v. Fischer, 167 Mo. 654.

*Jas. M. Rollins* for respondent.

GANTT, J.—At the June term, 1905, the grand jury of the city of St. Louis returned an indictment against the defendant, charging him with the violation of section 2169, Revised Statutes 1899. On July 20, 1905, the day prior to the one on which the case was set for trial, defendant filed a motion to quash the indictment, alleging, among other things, that said section of the statute, upon which the indictment was based, was unconstitutional. The motion to quash was sustained by the trial court, and the State tendered a bill of exceptions which was signed and filed, and an appeal taken by the State.

The indictment is in the following words:

"State of Missouri
 "City of St. Louis, } ss.

    "Circuit Court, City of St. Louis, June term, 1905.
    "The grand jurors of the State of Missouri, within and for the body of the city of St. Louis, now here in court, duly impaneled, sworn and charged, upon their oath present, that James W. Stuart, alias George W. Stewart, on the fifteenth day of December one thousand nine hundred and three, in the county of Alexander, in the State of Illinois, unlawfully and feloniously did marry and take to wife one Wilmer Jones, and to her, the said Wilmer Jones, then and there was married, without the State of Missouri, he, the said James W. Stuart, alias George W. Stewart, then and there still having a lawful wife living, to-wit, Loney Wells Stuart; and that the said James W. Stuart, alias George W. Stewart, afterwards, to-wit, on the sixteenth day of December, one thousand nine hundred and three, within the State of Missouri, to-wit, in the city of St. Louis aforesaid, and from that day until the eighteenth day of May, one thousand nine hundred and five, unlawfully and feloniously did abide and cohabit with the said Wil-

mer Jones and her, the said Wilmer Jones have to wife, the said former and lawful wife, the said Loney Wells Stuart, being then and there still alive; against the peace and dignity of the State.

"RICH. M. JOHNSON,<br>Assistant Circuit Attorney.

"A true Bill

"F. P. Crunden, Foreman."

The motion to quash, omitting caption, was as follows:

"Now on this day comes the defendant, by his attorney, and moves the court to quash the indictment herein for the reasons following:

"1.   Because the indictment charges no offense under the laws of the State of Missouri.

"2.   Because on the face of the indictment this court nor any other court in the State of Missouri has jurisdiction to inquire into nor to try this defendant; it being apparent and charged in the indictment that the alleged bigamous marriage took place in another county and State.

"3.   Because the charge contained in the said indictment is indefinite, uncertain and vague, and does not fully apprise defendant of the offense wherewith he is charged.

"4. Because of other reasons and matters apparent upon the face of the record."

I.   Section 2169, Revised Statutes 1899, is in these words:

"Cohabiting in this State bigamy, when:   Every person, having a husband or wife living, who shall marry another person, without this State, in any case where such marriage would be punishable if contracted or solemnized within this State, and shall afterwards cohabit with such person within this State, shall be adjudged guilty of bigamy, and punished in the same man-

ner as if such marriage had taken place within this State.''

By reference to the foregoing statement, it will be noted that the indictment in this cause is predicated on a violation of said section, and was quashed on motion by the circuit court of the city of St. Louis. We are not advised upon what ground the indictment was set aside, but the argument in this court on both sides was directed principally to the constitutionality of the section and to that question we will first address ourselves.

With the right of a sovereign State in the protection of the morals of its own citizenship to make crimes committed elsewhere punishable in her own courts, if the guilty offender shall come within her jurisdiction, we are not concerned in this case. The statute is leveled at an offense against public immorality committed in this State, to-wit, the continued cohabitation in this State under a bigamous and criminal marriage contracted without the State, which would be punishable in this State criminally if contracted or solemnized within this State.

By common law it was not punishable to marry a second time during the life of the first consort or to cohabit under such second marriage, though it was a Canonical offense, but as early as 1604 it was made a felony by an act of Parliament in England and Wales.

The prototype of our statutes on the subject of bigamy and bigamous cohabitation is found in the Statute 9 Geo. IV, ch. 31, sec. 22, which provides that ''if any person, being married, shall marry any other person during the life of the former husband or wife, whether the second marriage shall have taken place in England or elsewhere, every such offender, and every person counseling, aiding or abetting such offender, shall be guilty of felony,'' etc. This statute is to all intents substantially re-affirmed in 24 and 25 Victoria, ch. 100, sec. 57. Many of our sister States have followed the statute of 9 Geo. 4th, conforming it to our Ameri-

can conditions. That the General Assembly of Missouri has the power, for the protection of good morals and to punish indecency, to make the cohabitation of a man and woman begun under a bigamous marriage in another State, a felony in this State, there can be no sort of question, and it is practically conceded by the learned counsel for the defendant in this case that if the General Assembly had denominated the offense which it denounced in section 2169, Revised Statutes 1899, a *felony* only and not *bigamy* there could be no constitutional objection to it. Indeed a similar statute is found in many of our sister States. Thus it is provided by section 4933 of the Iowa Code that, "If any person who has a former huband or wife living marry another person *or continue to cohabit* with such second husband or wife, he or she, except in the cases mentioned in the following section, is guilty of bigamy," etc.

In State v. Steupper, 91 N. W. 912, the Supreme Court of Iowa sustained an indictment which charged the defendant with feloniously cohabiting with a woman in Iowa in 1901, after he had feloniously married her in Nebraska, the said defendant at the time of said marriage, and cohabitation, having a lawful wife living. The court said: "It is not the continuation of cohabitation within this State which is important, but it is the fact that in this State *cohabitation* continues, which was commenced in another State under the bigamous marriage."

It will be observed that the Iowa statute defines as bigamy the same acts which our State denounces as such.

By section 4185 of the Code of 1876 of the State of Alabama, it is provided: "If any person, having a former wife or husband living, marries another, or continues to cohabit with such second husband or wife in this State, he or she must, on conviction, be imprisoned in the penitentiary, or sentenced to hard labor for the county for not less than two nor more than five years."

In Brewer v. State, 59 Ala. 101, the Supreme Court of that State, speaking of this section, said: "But section 4185 of the Code declares two offenses of very different constituent elements, although of the same general character, and punishable in the same manner. One of the offenses can be prosecuted and punished only in the county in which the unlawful marriage is solemnized; in the other, no matter where the marriage takes place, if bigamous, the offense is complete if the parties thus unlawfully married 'continue to cohabit' in the county in which the indictment is found."

By section 2, chapter 130, Revised Statutes of Massachusetts of 1836, under the title of Polygamy, it is provided: "If any person, who has a former husband or wife living, shall marry another person, or shall continue to cohabit with such second husband or wife, in this State, he or she shall, except in the cases mentioned in the following section, be deemed guilty of the crime of polygamy, and shall be punished," etc., and in Commonwealth v. Bradley, 56 Mass. 553, an indictment charging that the defendant was married in New Hampshire in 1836, and afterwards in 1846, while that marriage was still subsisting, was married in Connecticut to another woman, and afterwards did cohabit and continue to cohabit with said second wife in Massachusetts, the said former wife still living, was held good and the conviction sustained. Many other similar statutes might be cited to show that in various states of our Union cohabitation under a bigamous marriage contracted without the state, has been denominated and defined as bigamy. At common law the entering into the second marriage while a former one remained undissolved was designated polygamy, but the terms bigamy and polygamy are used to denote the same offense by most modern law-writers, and treated under the same head. The proposition urged by the learned counsel for the defendant is that it was unconstitutional for the General Assembly to define continued cohabitation under a

bigamous marriage, as bigamy.

Conceding that the offense denounced in section 2169, Revised Statutes, would not have constituted bigamy as that term was and is used to designate the offense defined in section 2167, Revised Statutes 1899, and in various statutes in other states and as stated by authors on criminal law generally, why was it not competent for the General Assembly in the exercise of its plenary power to legislate to make that bigamy which before the enactment of section 2169 was no offense at all in this State? The contention of learned counsel, if followed to its logical conclusion, would lead to the nullification of many other statutes in this State. For instance, burglary, at common law, according to the accurate Mr. Chitty, was the breaking and entering the dwelling house of another in the night time with intent to commit a felony whether the felony be actually committed or not, and if a statute merely punished one who should commit burglary, doubtless the common-law essentials of the crime would be held necessary, but there is probably not a State in the Union which has not by its own legislation extended the offense so as to include breaking and entering in the *day time,* and so as to include breaking and entering shops, warehouses, railroad cars, booths, boats and other premises. So that at this day many acts constitute burglary which at common law or a few years ago were a different offense or on offense at all. In this State eleven different sections of our Criminal Code (secs. 1880 to 1890) are devoted to defining what acts shall constitute burglary, the larger portion of which did not amount to burglary at common law. The same may be said of numerous well-defined crimes at common law and it has been and is now the accepted doctrine of the courts that what acts shall constitute a crime, is a matter left entirely to the legislative branch of the goverment, subject of course to the limitations of the Federal and State constitu-

tions. [People v. Barry, 94 Cal. 481.]

Learned counsel for the defendant relies upon State v. Hartley, 185 Mo. 669, in which section 1825, Laws 1901, p. 128, which provides that, ''Every person who shall administer to any pregnant woman any medicine, drug or substance whatever, or shall use or employ any instrument or other means with intent thereby to destroy the foetus or child of such pregnant woman, unless the same shall be necessary to preserve the life of such woman, shall be guilty of manslaughter, in the second degree,'' was held inoperative by this court because the statute undertook to establish a degree of homicide where there was in fact no killing or homicide either of the mother or child, and the same view was taken of an almost exactly similar statute by the Supreme Court of Kansas in State v. Young, 55 Kan. 349. We still adhere to the Hartley case, but are of opinion that it does not support defendant's contention in this case or the judgment of the circuit court. As said by Mr. Bishop, ''Language is the offspring of the past, but its life is in and for the ever opening and progressive future. Its principal mission is to convey, from one mind to another, the new thoughts as they arise; for the old is continually dying while the new is being born. If each word had a single fixed and unchanging meaning and if there were simply certain established collocations of words, each with its one signification, the powers of language would be very limited, and it could never express a new idea.'' There is no such confusion of ideas or incongruity in the acts which our Legislature has declared in section 2169 shall constitute bigamy and be punished as such as there was and is in the law which we held inoperative in State v. Hartley, 185 Mo. 669.

The argument of counsel is that the unconstitutionality of section 2169 lies in the fact that it seeks to make cohabitation bigamy, and that it is beyond the power of the Legislature to name the acts denounced by the

statute bigamy. Counsel assumes that because the biga-
mous marriage is first contracted in a foreign state, the
crime is complete, and can not be again committed in
this State. We think counsel has misconceived the pur-
pose of our statute.

It does not purport or attempt to punish the void
form of a marriage, the prostitution of a solemn cere-
mony which the law permits only when a legitimate
union is formed, which of course is punishable in the
State where it occurs, but it does, what the greater num-
ber of the States of the Union have done: it makes the
continuation of a cohabitation, begun and commenced
under the void and illegal ceremony in another state,
in this State, a felony, and names it bigamy, and, of
course, punishable under our Constitution in the county
in which the offense is committed in this State.

Under the act of 9 George 4th, and under all the
statutes of the several States of the United States mak-
ing bigamy a felony or crime, the second marriage it-
self, however formal the ceremony, is void. Although
the statutes provide that if any person being married
*shall marry* another, it is obvious, as was said by Lord
Chief Justice COCKBURN in Regina v. Allen, L. R. 1 C.
C. R. 367, 12 Cox Cr. C. 193: ''When it is said, in con-
struing the statute in question, the same effect must
be given to the term 'marry' in both parts of the sen-
tence, and that, consequently, as the first marriage must
necessarily be a perfect and binding one, the second
must be of equal efficacy, in order to constitute bigamy,
it is at once self-evident that the proposition, as thus
stated, cannot possibly hold good; for if the first mar-
riage be good, the second, entered into while the first is
subsisting, must of necessity be bad. It becomes neces-
sary, therefore, to engraft a qualification on the propos-
ition just stated, and to read the words shall marry, in
the latter part of the sentence as meaning shall marry
under such circumstances as that the second marriage
would be good but for the existence of the first. But

State v. Stewart.

it is plain that those who so read the statute are intro-
ducing into it words which are not to be found in it,
and are obviously departing from the sense in which the
term 'being married' must be construed in the earlier
part of the sentence.   But when once it becomes neces-
sary to seek the meaning of a term concurring in a stat-
ute, the true rule of construction appears to us to be
not to limit the latitude of departure so as to adhere to
the nearest possible approximation of the ordinary
meaning of the term, or to the sense in which it may
have been used before, but to look to the purpose of the
enactment, the mischief to be prevented, and the
remedy which the Legislature intended to apply. . . .
Polygamy, in the sense of having two wives or two hus-
bands at one and the same time for the purpose of co-
habitation, is a thing altogether foreign to our ideas,
and which may be said to be practically unknown; while
bigamy, in the modern acceptation of the term, namely,
that of a second marriage consequent on an abandon-
ment of the first while the latter still subsists, is unfor-
tunately of too frequent occurrence.   It takes place, as
we all know, more frequently where one of the married
parties has deserted the other; sometimes where both
have voluntarily separated.   It is always resorted to by
one of the parties in fraud of the law, sometimes by
both, in order to give the color and pretence of marriage
where the reality does not exist. Too often it is resorted
to for the purpose of villainous fraud.   The ground on
which such a marriage is very properly made penal is,
that it involves an outrage on public decency and morals,
and creates a public scandal by the prostitution of a
solemn ceremony, which the law only allows to be ap-
plied to a legitimate union, to a marriage at best
but colorable and fictitious, and which may be made,
and too often is made, the means of the most cruel and
wicked deception. . . .   Now the words 'shall marry
another person,' may well be taken to mean shall 'go
though the form and ceremony of marriage with an-

other person.' . . . We think we are warranted in inferring that the words were used in the sense we have referred to, and that we shall best give effect to the legislative intention by holding such a case as the present to be within their meaning.''

When it is considered that in both cases the relation of the party who has a living husband or wife, and then goes through the form and ceremony of marriage with another person, and afterwards continues cohabitation with such party, is practically the same and an outrage on public decency and morals is perpetrated and a public scandal ensues, it is obvious, we think, that the two offenses are so nearly akin and partake of the same general character, that it was perfectly competent for the law-making power to describe both of them as bigamous, and that in so doing, the Legislature has done no more than it has done in extending the law of burglary to acts which at common law did not constitute burglary, and that there is no such a repugnancy in the nature of things as would justify this court in holding a statute which has been on our statute books since the Revised Statutes of 1855, and which has never before been questioned, as inoperative and void. If the simple word "marry" in the act of Parliament and in all of the statutes in the several states on the subject of bigamy, is susceptible of such diverse meanings in the same section, with what reason can it be said that the statute of this state and of Iowa and other states which designate the felonious continued cohabitation in pursuance of a bigamous second marriage as bigamy, and the statute of Massachusetts which defines it as polygamy, are inoperative merely because the word bigamy is used to define acts which theretofore had been used only to define the act of going through the form and ceremony of marriage with another person, when in law such marriage was illegal, criminal and void? We are not willing to strike down so salutary a statute on such a flimsy ground.

In support of this contention, the learned counsel has cited us to various decisions of this court which we will now consider.

In State v. Smiley, 98 Mo. 605, the defendant was indicted in Madison county. The indictment charged that the defendant on August 24, 1884, at the county of Johnson in this State, married Ruth Grant, he then hav-ing a wife living, and that afterwards and prior to the finding of this indictment he was lawfully apprehended and in custody in Madison county for the felony afore-said. The indictment was drawn under sections 1533 and 1536, Revised Statutes 1879. Section 1533 of the revision of 1879 was identical with section 2167, Re-vised Statutes 1899, but section 1536 provided that an "indictment for bigamy as defined in the preceding sec-tions, might be found and proceedings, trial, conviction, judgment and execution thereon had in the county in which such second or subsequent marriage or the co-habitation shall have taken place, *or in the county in which the offender* may be apprehended."

BLACK, J., after reciting sections 1533, 1535 and 1536, said: "The first marriage is alleged to have been contracted in this State, *so that section* 1535 (now sec. 2169, R. S. 1899) has no application whatever to the pre-sent case. Indeed it is not alleged that defendant cohab-ited at any time or place with Ruth Grant. The indict-ment is based on section 1533, and cohabitation is not made an element of the offense therein described. The offense was completed in Johnson county when the second marriage was solemnized. [State v. Fitzgerald, 75 Mo. 572.] The indictment should have been preferred by the grand jury of John-son county, unless it can be upheld by force of the last clause of section 1536, namely, 'or in the county in which the offender may be appre-hended.' There can be no doubt but the allegations of the indictment are sufficient to bring the case within this clause. This clause has nothing to do with the ele-

ments of the offense, and relates alone to the place
where the indictment may be found. Now under the
Constitution of 1875, the indictment for a felony must
be found by a grand jury of the county where the of-
fense was committed. [Ex parte Slater, 72 Mo. 102;
State v. McGraw, 87 Mo. 161; State v. Briscoe, 80 Mo.
644.] It follows that the clause of section 1536, just
quoted, is void, because in conflict with the Constitution
of 1875, and it matters not that it might have been up-
held under the Constitution of 1865.''

This case, therefore, is authority only for the pro-
position that where an indictment for bigamy is based
solely upon section 1533, Revised Statutes 1879, now
section 2167, Revised Statutes 1899, it must be found
in the county where the second or bigamous marriage
is solemnized and that so much of section 1536, Revised
Statutes 1879, as authorized an indictment and prose-
cution ''in the county in which the offender may be ap-
prehended,'' was void. This court expressly excepted
section 2169, Revised Statutes 1899, from the scope of
its opinion. Of the soundness of that opinion no doubt
whatever can be entertained under our Constitution of
1875. To the same effect is State v. McGraw, 87 Mo.
161, which simply decides that an indictment for burg-
lary can only be found in the county where the burglary
was committed. The other cases cited, to-wit: State v.
Cooper, 103 Mo. 266; State v. Hansbrough, 181 Mo. 348;
State v. Fitzgerald, 75 Mo. 571; State v. St. John, 94 Mo.
App. 229; Adair v. Mette, 156 Mo. 496, have no bearing
on the question now under consideration. They relate
solely to the quantum and character of proof necessary
to establish a valid first marriage in the prosecution of
the crime of bigamy. State v. Hatch, 91 Mo. 568, merely
holds that the crime of embezzlement can only be pros-
ecuted in the county in which the embezzlement occurs.

The statute ( sec. 2169, R. S. 1899) already quoted,
provides that ''every person, having a husband or wife
living, who shall marry another person, *without this*

*State,* in any case where such marriage would be punisable if contracted or solemnized within this State, and shall afterwards cohabit with such person within this State, shall be adjudged guilty of bigamy and punished," etc. It is at once obvious that this section is leveled at an offense committed in this State, but it makes no attempt to make any provision for the indictment or prosecution of such offender in a county other than that in which the bigamous cohabitation occurs in this State, and the indictment in this case charges the bigamous cohabitation to have. taken place in the city of St. Louis within this State, and the indictment is preferred by the grand jury of said city, so that it clearly appears that the indictment was found and prosecuted in the county in which the offense was committed and therefore the doctrine of Ex parte Slater, 72 Mo. 102, and State v. Smiley, 98 Mo. 605, and similar cases have no application unless we accept the contention that it is without the power of the State of Missouri to punish the cohabitation in this State of parties under a bigamous and felonious marriage solemnized in another State. To do this would be to announce that the State was impotent to punish an act, fragrantly immoral and indecent, committed within its own boundaries. In the langage of Mr Justice BALDWIN in Holmes v. Jennison, 14 Peters (U. S.) l. c. 618, "It would be but a poor and meagre remnant of the once sovereign power of the States, a miserable shred and patch of independence, which the Federal Constitution has not taken from them, if, in the regulation of its internal police, State sovereignty has become so shorn of authority as to be competent only to exclude paupers, who may be a burden on the pockets of its citizens; unsound, infectious articles, or diseases, which may affect their bodily health; and utterly powerless to punish those moral ulcers on the body political, which corrupt its vitals, and demoralize its members."

We hold that it is too clear for doubt that it is and

was entirely competent for the State to enact and enforce a law, such as is found in section 2169, Revised. Statutes 1899, to punish a man or woman who has contracted a bigamous marriage in another State, a marriage which would be punishable under the laws of this State if contracted here, and then cohabit within this State with the consort of such bigamous and criminal marriage. A statute like this obtains in many of the states of our Union and the power of such states to make and enforce it has been uniformly upheld. It is the offense against the State in which the bigamous cohabitation is committed, that is punished, and not the mere solemnization of a bigamous marriage in another State. The doctrine of relation has nothing to do with the question. [State v. Steupper, 91 N. W. 912; Brewer v. State, 59 Ala. 101; Bishop on Stat. Crimes, sec. 588; Finney v. State, 3 Head 544; Com. v. Bradley, 56 Mass. 553.] While a State cannot punish as crimes acts committed beyond the State boundary, "if the consequences of an unlawful act committed outside the State have reached their ultimate and injurious result within it, the perpetrator may be punished as an offender against such State." [Cooley's Const. Lim., p. 177, and cases cited in note 3; Beggs v. State, 55 Ala. 108.] We hold then that section 2169, Revised Statutes 1899, is a valid, constitutional statute and the objection that the indictment is bad because bottomed on an unconstitutional law, is not tenable.

II. As to the other grounds of the motion to quash, we think they are not well taken. The indictment alleges that at the time of the second marriage in Illinois, the defendant had a lawful wife, to-wit, Loney Wells Stuart, living; it avers the unlawful second marriage in Illinois and then, as already observed, charges that the defendant did afterwards, to-wit, on the 16th of December, 1903, and from that day until the 18th day of May, 1905, unlawfully and feloniously in the city of St. Louis, within this State, did abide and cohabit with

said Wilmer Jones, the said second wife. This was a substantial compliance with the statute and there is no merit in the claim that it only charges adultery. It individuates every fact necessary to bring the case within the provisions of section 2169, Revised Statutes 1899.

The circuit court erred in quashing the indictment and the judgment is reversed and the cause remanded for further proceedings.

*Burgess, P. J.*, and *Fox. J.*, concur.