**STATE of Missouri, Respondent,**

v.

**Russell H. HAMMOND, Appellant.**

**No. 53689.**

Supreme Court of Missouri,

Division No. 2.

Nov. 10, 1969.

Rehearing Denied Dec. 8, 1969.

John C. Danforth, Atty. Gen., Dale L. Rollings, Asst. Atty. Gen., Jefferson City, for respondent.

John P. Ryan, Jr., Kansas City, Thomas A. Vetter, Jefferson City, for appellant.

DONNELLY, Presiding Judge.

Defendant, Russell Herndon Hammond, was convicted of the unauthorized sale of narcotic drugs under § 195.020, RSMo 1959, V.A.M.S., by the Circuit Court of Jackson County, Missouri, and his punishment was assessed at imprisonment in the custody of the State Department of Corrections for a term of five years. Following rendition of judgment and imposition of sentence an appeal was perfected to this Court.

On or about July 25, 1966, defendant was introduced by a government informer to Federal Narcotics Agent Charles Klick. On August 1, 1966, defendant accidentally met Agent Klick and Agent Keith Fieger on a street corner in Kansas City. The

agents asked appellant if he could obtain any heroin for them. He told them he did not know and that he would have to call his connection, and asked them to call him that night at his home. They called defendant later that evening and he said he could not get in contact with his connection but that they should call him later.

On August 3, 1966, they called him again and defendant asked Agent Klick to come to his place of employment and meet him at 6:00 p.m. Agent Klick proceeded that evening with Agent Fieger to the defendant's place of employment. They then proceeded to a motel bar and sat drinking beer until approximately 8:30 p.m. at which time defendant announced, after several telephone calls, that his man was ready. During this period of time Agent Klick testified they had two or three beers. Agent Fieger testified that they had "three or four, probably." The three men then proceeded to an area at approximately 35th and Prospect Avenue in Kansas City, Missouri, and the agents gave the defendant $100. The defendant left their view for approximately five or ten minutes, then came back to the automobile, and handed Agent Klick a brown paper packet and said, "Let's get out of here." The agents proceeded to a service station where Agent Klick made a test on a portion of the substance which was in the packet which indicated that the substance was an opium derivative. At that time defendant stated: "Well, we will go to my house and cut it up," at which time the agents replied, "No, there is not enough here, it is too skimpy, we have been shorted, there is not enough quantity there, there is not enough for you." Defendant then said, "If you are not going to give me some of the heroin, I should get something." The agents then gave defendant a $10 bill and drove him to his house.

Defendant testified that he had been continually badgered by both the informer and the agents to find a source for and to buy drugs. He further testified that on the night of the purchase charged in the information he had not asked the agents to come to his place of business, and that going into the bar was the idea of the agents. They had five or six beers and it was only after two or three of these that he agreed to attempt to get some narcotics.

Defendant first contends the trial "court erred in submitting instruction number 3 to the jury in that it incorrectly stated the rule of law on entrapment as a valid defense."

 This Court spoke on the question of *entrapment* in State v. Decker, 321 Mo. 1163, 1169, 14 S.W.2d 617, 619, as follows: "Where the criminal intent originates in the mind of the defendant on trial, and the offense is accomplished, it constitutes no defense that an opportunity is furnished, or that an officer aids the accused in the commission of the crime, in order to obtain evidence upon which to prosecute him. But where the criminal intent originates in the mind of the entrapper, and the accused is lured into the commission of the offense charged, in order to prosecute him therefor, it is the general rule that no conviction may be had, though the criminality of the act is not affected by any question of consent."

Instruction No. 3 reads as follows:

"The defendant offers the defense of unlawful entrapment as to the crime charged in the information.

The law recognizes two kinds of entrapment: unlawful entrapment and lawful entrapment. Where a person has no previous intent to violate the law, but is induced or persuaded by law enforcement officers to commit a crime, he is entitled to the defense of unlawful entrapment, because the law as a matter of policy forbids a conviction in such a case.

On the other hand, where a person already has the readiness and willingness to break the law, the mere fact that Government agents provide what appears to be a favorable opportunity is no defense, but is

a lawful entrapment. When, for example, the Government has reasonable grounds for believing that a person is engaged in the illicit sale of narcotics, it is not unlawful entrapment for a Government agent to pretend to be someone else and to offer, either directly or through an informer or other decoy, to purchase narcotics from such suspected person.

If, then, the jury should find beyond a reasonable doubt from the evidence in the case that, before anything at all occurred respecting the alleged offense involved in this case, the defendant was ready and willing to commit crimes such as charged in the Information, whenever opportunity was offered, and that the Government agents did no more than offer the opportunity, the defendant is not entitled to the defense of unlawful entrapment.

On the other hand, if the jury should find from the evidence in the case that the defendant had no previous intent or purpose to commit any offense of the character here charged, and did so only because he was induced or persuaded by some agent of the Government, then the defense of unlawful entrapment is a good defense, and the jury should acquit the defendant."

Instruction No. 3 is essentially the same as Instruction No. 10.12, Mathes and Devitt, Federal Jury Practice and Instructions, pp. 135–136; Cf. Inst. No. 4.12, 27 F.R.D. 84–85. In Cross v. United States, 347 F.2d 327, the 8th Circuit Court of Appeals reviewed the law of *entrapment* and held a similar instruction proper. The reasoning of the Court, with which we agree, need not be repeated here. We hold that Instruction No. 3 correctly states the law of *entrapment* and that defendant's point is without merit.

■ Defendant next contends the trial "court erred in refusing to direct a verdict for the defendant when testimony of the State's witnesses proved that the federal agents had been buying intoxicating beverages for defendant immediately prior to the act charged. The agents' conduct constituted entrapment as a matter of law."

In this respect, the facts are quite similar to those present in State v. Taylor, Mo.Sup., 375 S.W.2d 58, and Lutfy v. United States, 9 Cir., 198 F.2d 760, 33 A. L.R.2d 879. In those cases, as here, defendants succumbed to the entreaties of the government agents "after several beers." Both cases held that the jury should be instructed on the law of entrapment and should decide the question. Defendant's point is without merit.

■ Defendant finally contends that the trial "court erred in failing to include an instruction on what constitutes a sale of narcotics since, based on the testimony at the trial, the jury could have inferred that defendant acted solely as the agent of the buyer in which case there would have been no sale by the defendant."

The trial court gave Instruction No. 2, which reads as follows:

"The Court instructs the jury that if you find and believe from the evidence, beyond a reasonable doubt, that at the County of Jackson and State of Missouri, on the third day of August, 1966, the defendant herein, RUSSELL HERNDON HAMMOND, did unlawfully and feloniously, and not as the result of unlawful entrapment as defined in Instruction Number 3, sell to one Charles Klick narcotic drugs, to-wit, 678 grams of heroin, a derivative of opium, then you will find the defendant guilty of Sale of Narcotics and so find in your verdict.

And, unless you find the facts to be as above stated, you are instructed to acquit the defendant of Sale of Narcotics.

'Feloniously' means wickedly and against the admonition of the law, that is, unlawfully.

If you find the defendant guilty of Sale of Narcotics, you will assess his punishment by imprisonment in custody of the Missouri Department of Corrections for a

term of not less than five years nor more than life."

The defendant did not request an instruction defining "sale of narcotics." Instruction No. 2 directed the jury to find defendant guilty if they found he "did * * * sell to one Charles Klick narcotic drugs * * *." The jury could not have failed to understand the meaning of this direction. "[I]t is only where terms employed may not be readily comprehended by the jury that their definition is required. Furthermore, if the defendant had desired its definition he should have asked an instruction defining it." State v. Padgett, 316 Mo. 179, 185, 289 S.W. 954, 957; Affronti v. United States, 8 Cir., 145 F.2d 3, 9[12]; State v. Papin, Mo.Sup., 386 S.W.2d 355, 360[9–12].

The judgment is affirmed.

All of the Judges concur.