**STATE of Missouri, Respondent,**

v.

**Frederick Louis STOCK, Appellant.**

**No. 55056.**

Supreme Court of Missouri, Division No. 2.

March 8, 1971.

John C. Danforth, Atty. Gen., J. Michael Jarrard, Asst. Atty. Gen., Jefferson City, for respondent.

Morris A. Shenker, Paul L. Dobberstein, Jr., Cordell Siegel, St. Louis, for appellant.

STOCKARD, Commissioner.

Appellant, Frederick Louis Stock, has appealed from the judgment entered pursuant to jury verdict wherein he was found guilty of making an unlawful sale of a narcotic drug, marijuana, and sentenced to imprisonment for a term of five years.

Appellant's first point is that the trial court erred in overruling his motion for judgment of acquittal "for the reason that as a matter of law the evidence disclosed

an unlawful entrapment." This calls for a statement of the evidence pertaining to the circumstances of the sale.

From the evidence a jury reasonably could find that the following occurred. On June 20, 1968, between 5:00 and 5:30 p.m., Police Detective Robin Charles Robbins, an officer for the narcotics bureau of the St. Louis County Police Department, drove in an unmarked automobile to the parking lot of the Parkmoor Drive-In Restaurant. For the purpose of his work he was dressed in a sport shirt and shaggy trousers, and he had a mustache, a small goatee and longer than usual hair. Detective Robbins gave $15 to Bill Berry, a confidential informant, and asked him to give it to appellant "for the purchase of some marijuana." Appellant was nearby in the lot with a group of four or five persons. Berry gave the money to appellant, who placed it in his pocket, and shortly thereafter appellant went to Detective Robbins and told him that "it would be awhile" because he, appellant, was waiting on a person by the name of Mike Brueckner, and that they were going to Brentwood "to pick up a shipment" and would return. Shortly thereafter, Brueckner came to the parking lot on a motorcycle, and after talking to appellant, he and appellant left on their respective motorcycles, each with a passenger. Approximately one hour later, Brueckner and appellant returned to the parking lot. Brueckner was carrying his helmet upside down, and when Brueckner and appellant approached the Detective's automobile, he saw that in the helmet there were several packets containing a green vegetable substance. Brueckner said "it wasn't very good stuff" but that Robbins could have his choice. Robbins told Brueckner to give him a packet, and Brueckner did so. He and appellant then left. Robbins sealed and marked the packet, and it was later examined and found to contain marijuana.

Defendant testified in his own behalf. He stated that he and his girl friend, whom he later married, went on his motor-bike to the Parkmoor parking lot where their friends habitually congregated, and that Mike Brueckner arrived a few minutes later. He further testified that Bill Berry came over to him, and after appellant offered to let him take a ride on his motorbike and he declined, Berry said that he "wanted [appellant] to get him some grass," and during the discussion he pointed toward Robbins and said, "this friend of mine over here is a rookie cop * * * and if I get him this grass * * * he could get out of some trouble that he was in." After appellant told him he didn't know where to get "grass," Berry requested appellant to ask Mike Brueckner to get some "grass" because "we're not on too good of speaking terms." Appellant then went to Brueckner and said, "Mike, Bill wants some grass or something and why don't you talk to him?" He then heard Brueckner and Berry talking, and he heard "something about $10 or $15" and "better make it $15," which he "surmised" pertained to the purchase of marijuana. Brueckner then said that he had to get a bolt for his motorcycle, and he asked appellant to get $15 from Berry, which he did and gave the money to Brueckner. Appellant admitted on cross-examination that he "would imagine" the money was to buy marijuana, and that was "what happened to it." After appellant gave Brueckner the money, he then drove off, according to appellant, to get the bolt. It was then five-thirty o'clock, and appellant told Robbins that Brueckner had said he would be back at six o'clock. When Brueckner returned, he and appellant went for a ride on their motorbikes to a street near Clayton Road. Appellant waited on his motorbike while Brueckner went "in there," and after seven or eight minutes he returned and they rode back to the parking lot. Appellant did not "see anything in his hands or anything." At the parking lot, Brueckner went to Robbins and gave him something, but according to appellant, he did not see what it was.

Unlike State v. Taylor, Mo., 375 S.W.2d 58, the trial court in this case gave an in-

struction on the defense of unlawful entrapment, and there is no challenge to that instruction. Appellant's contention is that the evidence establishes unlawful entrapment as a matter of law. We do not agree.

■ Generally speaking, the defense of unlawful entrapment is not available to an accused charged with an unlawful sale of narcotics who denies that he made the sale because the defense is premised on the basis that he did make the sale. 33 A.L.R.2d at p. 910. But, disregarding the possible application of that rule to this case, we shall turn to the issue of unlawful entrapment.

In State v. Hammond, Mo., 447 S.W.2d 253, this court quoted with approval from State v. Decker, 321 Mo. 1163, 14 S.W.2d 617, as follows: "'Where the criminal intent originates in the mind of the defendant on trial, and the offense is accomplished, it constitutes no defense that an opportunity is furnished, or that an officer aids the accused in the commission of the crime, in order to obtain evidence upon which to prosecute him. But where the criminal intent originates in the mind of the entrapper, and the accused is lured into the commission of the offense charged, in order to prosecute him therefor, it is the general rule that no conviction may be had, * * *.'" In Butler v. United States, 4 Cir., 191 F.2d 433, we find what we consider to be an informative and realistic statement concerning the issue of unlawful entrapment as follows: "What do we mean by entrapment in the law? Of course, in every arrest there is a certain amount of entrapment in order to outwit the persons who are violating the law or who are about to violate the law. A certain amount of deception has to be exercised in most cases. The law does not forbid that. The type of entrapment that the law forbids is the entrapment which involves originating in the mind of someone a violation of the law, instead of inducing that person already having in mind to violate the law to violate it again. In other words, the question as to whether or not there has been the entrapment that is forbidden by the law depends upon whether or not what is done leading up to the violation amounted to putting it in the mind of a person who had no notion or intent of violating the law, who had no inclination heretofore to do it, and leading him into doing it for the first time. That is the entrapment that is forbidden."

It has been repeatedly and almost universally held that where an informer or undercover agent has been given money by the police and instructed to make a "buy" of narcotics from a person whom the officer had reason to believe was engaging in such activity, the defense of unlawful entrapment is not available; at least such facts do not constitute entrapment as a matter of law. See the numerous cases collected in the annotation entitled "Entrapment to commit offense with respect to narcotics law." 33 A.L.R.2d 883, l.c. 891 et seq. See also State v. Hammond, supra; State v. Taylor, Mo., 375 S.W.2d 58, and Lutfy v. United States, 9 Cir., 198 F.2d 760, 33 A.L.R.2d 879, in which the facts are substantially similar to those in this case.

■ It may be that under the evidence in this case, particularly the testimony of appellant, a jury might reasonably find unlawful entrapment, but the evidence does not compel that finding. That issue was submitted to the jury and by its verdict it found that there was no unlawful entrapment. We find no merit to appellant's contention.

Appellant next contends that the trial court erred in failing to hold a hearing on the issue of his incompetency to stand trial. A statement of additional facts is necessary.

In the motion for new trial, counsel for appellant alleged that "unbeknownst to his counsel" appellant had been for approximately a year prior to trial under the care of Dr. Wilbur H. Gearhart, a psychiatrist. Attached to the motion for new trial was a

letter, addressed to the court, from Dr. Gearhart in which he stated that he first saw appellant on April 23, 1968, and that based upon his observation and treatment of appellant it was his opinion that on June 20, 1968 (the date of the offense) "as a result of mental illness or defect, though most likely knowing the wrongfulness of his conduct, [appellant] was unable to appreciate the nature of his wrongful conduct and had considerable difficulty conforming his conduct to the requirements of the law." The doctor further stated in the letter that he also was of the opinion that at the time of trial, "as a result of mental disorder or defect [appellant] lacked the capacity to understand the proceedings or to assist in his own defense." Appellant's counsel attached an affidavit that he had not been informed by anyone "until after the case had gone to trial" that appellant had been or was then under the care of a psychiatrist, and that "there was nothing in his demeanor or comments which alerted [him] to the possibility [that] he might be suffering from severe psychological disturbances," except that at a conference immediately before trial appellant "seemed unable to grasp the fact conviction was a distinct possibility and was disturbingly incapable of maintaining a satisfactory sustained response to [his attorney's] repeated suggestions and demonstrations as to how, as a witness in his own behalf, he should comport himself."

A hearing was held as to the allegations in the motion for new trial concerning appellant's competency. Dr. Gearhart testified and restated the conclusions he previously had set out in his letter to the court. He also stated that a report by the Roche Psychiatric Service Institute indicated that appellant had a personality disorder which is characterized by immaturity, impassivity, a tendency toward emotional instability, and lack of emotional control to the point that he tends to get into difficulty in social and personal relationships, and might become hostile or anxious or impulsively act in a way which would be irresponsible. He also stated that he had schizoid traits which have to do with day dreaming, eccentric thinking, feelings of depersonalization, experiencing strange and unusual thoughts, having philosophical views about life which are eccentric, and a tendency to be withdrawn, hostile, and sometimes paranoid.

Thereafter, on June 20, 1969 the court ordered that appellant be examined by Dr. Paul Hartman, a private physician, and it further ordered that a hearing be held on July 24, 1969, at which time Dr. Hartman would present his findings on the mental condition of appellant and his mental fitness to have proceeded to trial on April 7, 8 and 9. The court also directed that the doctor submit his written report prior to July 18, and that a copy be furnished to appellant's counsel and also to the prosecutor.

Apparently appellant missed or failed to keep his first appointment with Dr. Hartman, but an examination of appellant was had on August 5. In his report, as supplemented, Dr. Hartman stated that his examination revealed "a man who is quite superficial and inadequate" but he found "no evidence of any serious psychotic thought disturbance, and there are no hallucinations or delusions." He found "some difficulty in concentration, and both judgment and reason are faulty." He expressed the opinion that appellant had "a personality disorder characterized by general inadequacy" * * * and of "long standing" which was present at the time of his trial, but that his personality defect "would not excuse or account for any criminal activities and would not interfere with his ability to participate in his defense in a trial for such activity."

On August 12, counsel for appellant filed what was labeled "Addendum to Motion for New Trial" in which he contested the report of Dr. Hartman on the grounds that it made no mention of the dates of trial but found appellant capable of participating in his defense "at the present time," and because in the report the doctor stated that appellant "should be tried for any

crimes which he has committed and if found guilty should receive an appropriate sentence." He asserted that this expressed an opinion of guilt and made it difficult for the court to give consideration to any of the grounds for a new trial except those pertaining to mental incompetency.

August 13 was the last day the court could rule on the motion for new trial, and on that day it filed a memorandum in which it set out the facts substantially as above related, and stated that the "application of § 552.020 [all statutory references are to RSMo 1969, V.A.M.S.], affording the parties five days to request an order granting an examination by a physician of their own choosing cannot be considered within the time available to the court on the motion for new trial," but "on the basis of the presentments made the court is unable to find that 'the accused lacks the mental capacity to proceed.' "

■ We are of the opinion that appellant was entitled to a hearing. As noted in State v. Lowe, Mo., 442 S.W.2d 525, § 552.020, pertaining to mental disease or defect excluding fitness to proceed with trial does not require that the motion provided for be filed at any particular time, and § 552.010 provides that no person who lacks such capacity shall be tried, convicted or *sentenced* so long as the incapacity exists. This implies that the motion can be made any time before sentencing. In McCormick v. State, Mo., 463 S.W.2d 789 this court stated that § 552.020 requires only that the trial court *may* hold a hearing on the issue of competency to stand trial on its own motion, and *shall* hold a hearing when the psychiatric report made pursuant to par. 3 of § 552.020 is contested.

■ In this case appellant did not as contemplated by § 552.020 file a separate motion raising the issue of a mental disease or defect excluding fitness to proceed. Instead, he presented the issue in his motion for new trial, and apparently the trial court was of the opinion that being so incorporated the psychiatric examination and

report by the private physician and the hearing in the event of the report being contested, had to be completed prior to expiration of the time the motion for new trial would be considered overruled by operation of law. This is not to say that it is improper to present the issue in a motion for new trial as a basis for granting a new trial, but when appellant seeks to invoke the procedures of Chapter 552, in order to avoid precisely what happened in this case, a motion directed to Chapter 552 should be separately submitted or identified. In view of the fact that there has been no previous case on this procedural matter, we shall consider the allegations in the motion for new trial pertaining to mental disease or defect excluding fitness to proceed as constituting a separate presentation of that issue.

■■ By reason of the report and testimony of Dr. Gearhart the trial court apparently considered that it had reasonable cause to believe that appellant had a mental disease or defect excluding fitness to proceed, because it exercised its discretion and appointed a private physician to make an examination and report as provided for in par. 3 of § 552.020. Appellant contested in writing that report on the day after it was filed, but no hearing was thereafter held. However, par. 6 of § 552.020 expressly provides that when the court appoints a private physician pursuant to par. 2, and the report of that physician is contested, "the court *shall* hold a hearing on the issue." This requirement of a hearing is not limited by the 90-day period in which the court may rule on a motion for new trial. Instead, as noted in State v. Lowe, supra, this procedure may be invoked anytime prior to sentence. We are of the opinion that under the circumstances of this case the "hearing on the issue" was made mandatory by the statute.

Appellant's final contention is that § 195.010(17) which classifies cannabis (marijuana) as a narcotic drug, for which the penalties provided in § 195.200 apply, is in violation of Article I, §§ 2 and 10, Con-

stitution of Missouri, V.A.M.S. and the Fourteenth Amendment of the Constitution of the United States "as a denial of due process and the equal protection of the laws."

■ We note first that these constitutional issues were not presented to the trial court. The general rule is that constitutional issues must be raised at the earliest opportunity consistent with orderly procedure, and cannot for the first time be presented on appeal. State v. Meiers, Mo., 412 S.W.2d 478. However, considering the point as seeking the application of the plain error rule, we find no merit to the contention.

Appellant argues that § 195.010 includes "cannabis" within the definition of "narcotic drugs" when in fact marijuana is not categorized scientifically, medically or chemically as a narcotic drug "but would be more appropriately categorized as hallucinogenic." He contends that this is so well known that it is a matter for judicial notice by this court, and that the classification of marijuana as a narcotic drug, "in which category it does not belong, thereby subjecting [appellant] to the harsher penalties of § 195.200, is arbitrary and unreasonable" and for that reason the statute violates the due process and equal protection of laws provisions of the state and federal constitutions. No supporting authority is cited.

■ "[T]he definition and punishment of crime in general is a legislative function upon which the courts may not encroach," State v. Perkins, Mo., 380 S.W.2d 433; 21 Am.Jur.2d Criminal Law, § 14, and so long as constitutional limitations are not infringed, the will of the legislature in this respect is absolute. State v. Stewart, 194 Mo. 345, 92 S.W. 878. Appellant does not attempt to demonstrate how he is denied due process of law, and we find no such denial. He contends that he is denied equal protection of the law because the punishment for the sale of a hallucinogenic drug is not as harsh as the penalty for the sale of a narcotic drug. That does not deny him equal protection of the laws. All who sell marijuana are subject to the same punishment, and the legislature can, if it deems it advisable to control the unlawful traffic in marijuana, classify marijuana as it has done so. It is not bound by the dictionary or chemical definition of a narcotic drug. People v. Lee Foon, 250 App.Div. 616, 294 N.Y.S. 872. It may also impose a more harsh penalty for the sale of marijuana when there is a reasonable legislative basis for doing so. See Bettis v. United States, 9 Cir., 408 F.2d 563; Gallego v. United States, 9 Cir., 276 F.2d 914; Halprin v. United States, 9 Cir., 295 F.2d 458. We find no merit to this contention.

The judgment is reversed and the cause remanded with directions that the trial court hold the "hearing on the issue" as contemplated by par. 6 of § 552.020, and after determination of that issue then, depending upon the findings of the trial court, accord allocution and enter a new judgment or take the action contemplated by par. 7 of § 552.020, and such other action as is proper under the circumstances. It is so ordered.

BARRETT and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.