**STATE of Missouri, Respondent,**

v.

**Donald HORTON, Appellant.**

**No. 42248.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Sept. 23, 1980.

Jack L. Duncan, Flat River, for appellant.

John Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, Gary E. Stevenson, Pros. Atty., Farmington, for respondent.

REINHARD, Judge.

Defendant was convicted by a jury of two counts of the sale of a controlled substance, a felony under §§ 195.017, 195.020, and 195.200, RSMo 1978. He was sentenced in accord with the jury verdict to two concurrent terms of five years with the Department of Corrections. We affirm.

Defendant's appeal raises two points, the first involving the issue of entrapment, and the second involving the relevancy of certain questions asked in cross–examination.

In his first point, defendant claims he was entrapped as a matter of law into committing the offenses.

The state's evidence adduced at trial showed the following: Officer Hug, a state highway patrolman, was assigned to investigate the narcotics trade in St. Francois County in February of 1978. Through a female informant, he arranged a meeting with the defendant at the informant's trailer in Desloge on March 28, 1978. The purpose of this meeting was a sale of marijuana. Officer Hug gave defendant $225, half of the purchase price. Defendant left, using the informant's car, and returned later with a pound of marijuana. Thereafter, Officer Hug gave defendant the other $225.

On May 19, 1978, the second sale took place. Defendant and Officer Hug met in Flat River Park, and from there went to the informant's trailer. There, the defendant estimated the weight of an ounce of marijuana, put it in a bag, and handed it to Officer Hug. Officer Hug weighed it with his own scale and paid defendant $40. Thereafter, while Officer Hug was still in the trailer, defendant sold five "joints" to another man for five dollars.

At trial, the pound of marijuana from the first sale and the ounce from the second were produced and identified as marijuana. The testimony of Officer Hug and two highway patrol chemists made up the whole of the state's case.

On direct examination of the defendant, the facts supporting entrapment were brought out. The informant had asked defendant to sell Officer Hug some marijuana but he was reluctant. She told him that Officer Hug would pay more for the marijuana than it was worth. The informant persisted and defendant refused. He estimated he refused ten times. Then, under the financial pressure of his car breaking down, he agreed to make the sale and the first date was set. Defendant admitted selling Officer Hug the pound on March 28.

After the first sale, the informant again asked defendant to sell Officer Hug marijuana. Defendant estimated that informant asked him twelve to fifteen times. "She said that [Hug] thought that I was screwing him around because he knew that I could get this pot for him and I just wasn't doing it for him and I should be doing it for him or else he was going to get mad and come down and get vicious with me, basically." Defendant finally agreed to make the second sale. Previous to these two sales, defendant stated that he had never sold marijuana.

Defendant admitted that during the time he made the sales, he had been smoking marijuana at the informant's trailer and that he had used drugs other than marijuana. The defendant testified that he had purchased marijuana from the informant a number of times and that he knew of at least one other source from which to obtain marijuana. Further, defendant stated that he and his friends "bummed" marijuana from each other.

Defendant's evidence of persistent solicitations by the informant[1] to the defendant to commit the crime, his reluctance to commit the crime, as well as the alleged threat by Officer Hug, constitute substantial evidence of entrapment. *State v. Weinzerl*, 495 S.W.2d 137, 143 (Mo.App. 1973). The state agrees. In such a case, lack of entrapment becomes an additional element of the offense, and if the state fails to rebut the inference of unlawful inducement, the defendant is entitled to a judgment of acquittal. *Id.* at 141. To rebut the inferences of unlawful inducement, the state had to present substantial evidence of predisposition of defendant to commit the crime, that is, that the criminal intent originated with the defendant. *State v. Devine*, 554 S.W.2d 442, 446 (Mo.App.1977).

Although there is no evidence of a prior sale of marijuana, "[t]here is no requirement that the state's evidence of predisposition pertain precisely to the crime defendant actually committed. So long as the evidence relates to conduct evidencing wrongful intent of the same nature as involved in the actual offense, it may be properly considered on the issue of predisposition. *State v. Hyde*, 532 S.W.2d 212, 215 (Mo.App.1975)." *State v. Prock*, 577 S.W.2d 663, 665 (Mo.App.1979). The *Hyde* case held evidence of prior possession of marijuana, hashish, and cocaine to be sufficient evidence of predisposition in a prosecution for sale of cocaine.

Here, pursuant to *Hyde*, the evidence of defendant's repeated use of marijuana and other drugs was sufficient evidence of predisposition to refute the inference of unlawful inducement.

Defendant's second point on appeal concerns questions asked the defendant and a defense witness during cross-examination of each. The state asked each whether he had used drugs other than marijuana. Over a defense objection of irrelevance, each was allowed to answer, and each answered affirmatively. Defendant here renews his contention that the questions were irrelevant and adds that they were also inflammatory and prejudicial.

The argument that the questions asked defendant were irrelevant is disposed of by our holding above, namely, that defendant's testimony was proper evidence of his predisposition, which was an element of the offense. Testimony which tends to establish one of the elements of the offense charged is undoubtedly relevant. *See State v. Van Regenmorter*, 465 S.W.2d 613, 617 (Mo.1971).

With respect to the questions asked of the defense witness concerning his use of other drugs, the state contends that they were proper impeachment even if they led the jury to infer that the witness had committed the criminal act of possession of these drugs. It is the settled rule that a witness may be asked whether he has committed specific criminal acts, subject to his claim of right against self–incrimination. *State v. Lynch*, 528 S.W.2d 454, 457 (Mo. App.1975). It is well recognized that the purpose of such questions is to test the credibility of the witness. *Id.*

We feel the questions asked showed a possible bias of the witness concerning the offense with which the defendant was charged. This bias would affect the credibility of the witness. We therefore feel the trial judge did not abuse his discretion in allowing the questions.

Judgment affirmed.

DOWD, P. J., and CRIST, J., concur.

---

1. Officer Hug testified that he had trained the informant in police techniques.