THE STATE v. TENNIS DECKER, Appellant.—14 S. W. (2d) 617.

Division Two, March 2, 1929.

*Phil M. Donnelly* for appellant; *I. W. Mayfield & Son* of counsel.

*Stratton Shartel,* Attorney-General, and *Claud E. Curtis,* Special Assistant Attorney-General, for respondent.

DAVIS, C.—In an information filed in the Circuit Court of Pulaski County, the defendant herein was charged with manufacturing, on August 21, 1926, hootch, moonshine, corn whiskey. The verdict of the jury was guilty as charged in the information, and his punishment was assessed at two years in the penitentiary. Defendant appealed.

The State's evidence warrants the finding that, during the summer of 1926, the Sheriff of Pulaski County employed Luther Ousley

and Fred Ruhl for compensation to aid in catching lawbreakers and particularly defendant, surmised by the sheriff to be such. On August 13, 1926, Ousley on a dark night directed the sheriff, accompanied by his son and Ruhl, to a barrel of corn-chops mash, cached behind a log and imbedded in the ground within a few inches of the top, on the bank of the Gasconade River in Pulaski County. Across the river defendant lived with his father on the latter's farm. The barrel was located about two miles from the county road, and from first viewing it until defendant's arrest the sheriff kept the place under espial. On the night of August 20, 1926, the sheriff, by prearrangement, went to the home of Ousley and then to that of Ruhl and was told by them that a run of whiskey would be made the next morning. Around three o'clock on the morning of August 21, 1926, the sheriff and his son stationed themselves near the barrel, and between daylight and sun up, they saw defendant, carrying a worm, approach a boat moored to the opposite bank, accompanied by an unidentified man bearing a cream can. They entered the boat and defendant rowed it to a point near the barrel. Shortly thereafter, the sheriff and his son quietly departed, and went to the homes of Daniel Nicks and Bill Nicks, deputizing them and their sons. At nine :thirty A. M. the posse returned and, separating, closed in on the place from different directions. The defendant was seen to put wood on the fire. The sheriff halloed to defendant to stick them up, but he fled into the river, with the sheriff and his son shooting around him. After a parley, the defendant returned to the shore and was arrested and handcuffed. They returned to the barrel and found the cream can full of mash, with a fire under it, and a coil running from it through a barrel of cool water and dripping into a jar. The jar contained a tablespoon or so of moonshine whiskey.

While in jail, defendant was interrogated by Ousley at the instance of the sheriff, and was heard by him while concealed to say, "Oh, my God, he has got me now. I am sure for the penitentiary. My reputation is ruined." Ousley asked, "Well, why didn't you do what you were going to do before you got caught?" Defendant replied: "Well, I tried to get the s—o—b—, but I couldn't get my man down here from Jefferson City." On the day following, in the sheriff's office, the sheriff said that defendant admitted that the confiscated worm was the same worm that defendant recovered from Dick Bowers after lending it to him; and that defendant admitted that something was said about having the sheriff killed in a previous conversation with Bowers and one Russell, but that defendant denied that he was the man that was going to have it done. The Sheriff of Laclede County and his son, present on the occasion, testified that defendant said that he let Bowers and Russell have a barrel and a worm.

The State's evidence further develops that Ousley was present at the time of defendant's arrest, a few yards away, and was covered by a gun in the hands of a posseman, while lying on the ground, but was told by the sheriff's son not to shoot, as Ousley was all right. Ruhl was also present. Neither Ousley nor Ruhl was arrested. At the conference the night before, Ousley and Ruhl agreed with the sheriff to meet defendant about daylight the next morning.

The defendant testified, in substance, that Ousley approached him in June, 1926, and asked him to make moonshine whiskey. Upon stating that he refused to do so, the State objected and the court sustained it, and ordered that the answer be stricken out, and the jury were instructed not to consider it on making up their verdict. Defendant said that Ousley and Ruhl were at his home the evening before he was arrested, and he agreed to meet them at the river the next morning, and that on the next morning he rowed them across the river. Ousley had a cream can and a copper coil, which he took over in the boat and unloaded. Defendant then went down the river to his trot-lines. About an hour later, while employed on his trot-lines, Ousley shouted to him to come over, and he did so. When he had been there about two minutes, Ousley said, ''The fire is getting pretty hot, rake it out,'' and defendant picked up a little stick, but before he could touch the fire, the sheriff said, ''Stick them up.'' Defendant then jumped over the bank into the river, but was shot at by the sheriff, who threatened to kill him if he did not return, whereupon he submitted to arrest, and was handcuffed. Defendant stated that he did not start the fire or have anything to do with it that morning; that Ousley brought out a sack of sugar and left it in the weeds, and while he surmised his purpose, they had no conversation regarding it. Later Ousley brought out a cream can, and asked defendant what to do with it. Defendant said that he did not know what he was going to do with it; to take it way, as he did not want to have anything to do with it. Defendant stated that he did not make or manufacture whiskey on the day in question. He denied admitting that the coil belonged to him, or that he was in a plot to kill the sheriff, or that he knew of the equipment found there until that morning. When he jumped in the river, he said he saw that he was not in the right place and he knew that things were wrong before the advent of the sheriff. Defendant admitted that he had been convicted of selling whiskey.

The testimony of witness Ruhl for defendant tends to show that in 1926, in connection with Ousley, he was hired by the sheriff to catch defendant making whiskey. Ousley was the one who led and discovered to them, in the first instance, the mash barrel. The evening before the arrest, they went to defendant's home to get him to make whiskey, and Ousley offered defendant twenty dollars to make it without Ousley being present, but defendant refused, telling Ousley

he would have to be there. Ousley said he intended making whiskey the next morning, and made arrangements to meet defendant at the river. Ousley brought the coil and the cream can to the boat and defendant rowed them over. Witness knew the sheriff was attempting to catch defendant. Ousley unloaded the coil and the can, and defendant rowed to his trot-lines on the river. No fire was burning when witness went for wood, but he found it burning on his return. On cross-examination, he said that the sheriff, the night before, arranged with Ousley and witness to have defendant make whiskey. A few days previous to the arrest, Ousley, witness and defendant went to the mash barrel, and the occasion of going was that Ousley asked them to take a drink out of his barrel. Witness said, that the sheriff promised to pay them to get defendant to the river.

Witness Saling testified that about a week before defendant's arrest, he drove with Ousley to defendant's home with a hundred-pound sack of sugar, but that he took the sugar to the river bank and unloaded it and cached it in the brush or weeds.

Witness Godfrey testified that around August 1, 1926, Ousley drove up with a cream can in his car, but that he drove away with it toward the river. Earl and Ernest Anderson corroborated Godfrey. Godfrey and Ernest Anderson admitted that they had been convicted of possession of whiskey. The Anderson boys were cousins of defendant. Defendant had a subpoena issued for Ousley, but was unable to have him at the trial as he was out of the State, according to the evidence. Other pertinent facts will appear in the course of the opinion.

I. Defendant takes the position that the evidence justified an acquittal on the ground that it disclosed an entrapment. The State's evidence goes no further than showing that Ousley and Ruhl were employed by the sheriff to aid in apprehending lawbreakers, particularly defendant, with the further facts that Ousley disclosed to the sheriff the cache of the mash barrel, and that he was present at the manufacture of the whiskey. An officer of the law is enveloped with a moral obligation, at least, to apprehend lawbreakers. Consequently, we see nothing improper or illegal in employing others to that end. From the State's evidence, that Ousley directed and apprised the sheriff of the location and existence of the mash barrel, and that he was present during the process of manufacture, a conclusive inference of entrapment does not arise. So far as the State's evidence discloses, the scheme of manufacturing whiskey may have originated in the mind of defendant. It is evident that his guilt was a jury question.

II. It is clear from defendant's evidence, however, that the scheme of manufacturing whiskey originated in the mind of Ousley. The rules applicable may be stated thus: Where the criminal intent originates in the mind of the defendant on trial, and the offense is accomplished, it constitutes no defense that an opportunity is furnished, or that an officer aids the accused in the commission of the crime in order to obtain evidence upon which to prosecute him. But where the criminal intent originates in the mind of the entrapper, and the accused is lured into the commission of the offense charged in order to prosecute him therefor, it is the general rule that no conviction may be had, though the criminality of the act is not affected by any question of consent. [18 A. L. R. 146.]

There is sufficient evidence in the record for the inference to obtain that Ousley arranged, prepared and planted the barrel of mash. There is no doubt from defendant's evidence that Ousley furnished the cream can, the sugar and the worm, and lured defendant into a situation that connected him with the still. Ousley was in the service of the sheriff as a decoy, and the sheriff was responsible for his acts in the apparent scope of his employment. He not only served as a decoy, but he made the preparations and furnished the equipment and actually engaged in the manufacture of whiskey, for he was present at the time. The facts develop that the entrapper, by promising to perpetrate a crime, lured his victim on, the object being, not the perpetration of crime, but the luring of the victim. Defendant was not an active participant in the crime, but at most was an aider and abetter of Ousley and Ruhl, and therefore only guilty if they were guilty. Ousley and Ruhl were guilty only in the event they had a criminal intent, and as they perpetrated the acts only as decoys to entrap defendant, under the service of the State, without intent to unlawfully manufacture whiskey, it is evident that they are not guilty. The evidence for defendant tends to show that he had not recently violated the law, and it does not develop a present intention of violating it. It fails to show that he had ever before engaged in the manufacture of whiskey. The facts may be summed up as showing that neither Ousley nor Ruhl, the principals, committed an offense, and consequently defendant, a mere aider and abettor, or principal in the second degree, could not be guilty. [Woo Wai v. United States (C. C. A.), 223 Fed. 412.] The facts do not disclose an analogy to the facts of a sale, where defendant possessed whiskey unlawfully. [See State v. Sheeler, 7 S. W. (2d) 340.]

Also, with respect to entrapment, it must appear that defendant on trial himself did everything necessary to show a complete offense against the law. Even if done with the knowledge and consent of defendant, nothing may be imputed to him that was done by the entrapper; and if, in order to constitute the crime, it was necessary

to impute something done by the entrapper to him, then the prosecution fails. [State v. Hayes, 105 Mo. 76, 16 S. W. 514, 24 Am. St. 360.]

Defendant did not offer an instruction involving entrapment, but he complains of the action of the trial court in that regard in his motion for a new trial. If an instruction of that nature involves merely a collateral issue, then defendant may not complain, for he did not attempt to offer such an instruction. [State v. Conrad, 322 Mo. 246, 14 S. W. (2d) 608.] If, however, it involves what is the law of the case, defendant may predicate error on it, even if he failed to offer it, provided the motion for a new trial complains of it. [State v. Burrell, 298 Mo. 672, 252 S. W. 709.] The law of the case comprehends the elements of the offense charged, as shown by the evidence. Entrapment was one of the elements of the offense, for, if defendant was entrapped, he was not guilty, as we have shown. The court erred in this regard.

III. Defendant charges that he was entitled to have the jury consider the statements and inducements of Ousley to him before his arrest, as shown by the witnesses. After an objection was sustained, defendant offered to prove by witness Godfrey that Ousley asked permission to leave the cream can at defendant's house, but defendant refused and told him to take it away. Again, after objections were sustained, defendant made similar offers as to witnesses Earl Anderson and Ernest Anderson.

After an objection had been sustained, defendant offered to prove by witness Nelson, a cousin of the sheriff, through an examination of the witness with the jury absent, that, in June, 1926, in the courtyard at Waynesville, and in his presence, Ousley approached defendant and asked him to come up to help him make whiskey. The record then shows the following: "And Tennis Decker said, 'I don't want to make no more whiskey. I haven't no outfit nor no money nohow, and I was in trouble once and I want to get out, I want to pay out if I can.' And Ousley said to Decker, 'I will furnish everything and give you twenty dollars a day to help me,' and Decker refused." The court sustained an objection to the offers of proof on the ground, in each instance, that the statements were self-serving.

The court erred in rejecting the offered evidence, for it tended to rebut the inference arising from the State's evidence that defendant was present at the time of his arrest as a participant in the manufacture of moonshine. Moreover, it tended to rebut any inference arising from the evidence that the scheme originated with defendant and tended to show that it originated with and was conceived by Ousley. The conversations were also a part of the res gestae, and it was for the jury to say whether they were a part of a criminal

scheme, or were undesigned expressions, illustrative of acts. [State v. Young, 119 Mo. 495, l. c. 522, 24 S. W. 1038.]

Inasmuch as we conclude that error obtained, it is unnecessary to discuss the remaining charges of error. The judgment is reversed and the cause remanded. *Higbee* and *Henwood, CC.,* concur.

PER CURIAM:—The foregoing opinion by DAVIS, C., is adopted as the opinion of the court. All of the judges concur.