**STATE of Missouri, Respondent,**

**v.**

**Cornelius C. RICE, Appellant.**

**No. 52887.**

Supreme Court of Missouri,
Division No. 2.

Oct. 9, 1967.

---

Norman H. Anderson, Atty. Gen., Jefferson City, Richard G. Altobelli, Special Asst. Atty. Gen., St. Louis, for respondent.

J. Whitfield Moody, J. Arnot Hill, The Legal Aid and Defender Society of Greater Kansas City, Kansas City, for appellant.

BARRETT, Commissioner.

A jury found the appellant, Cornelius Rice, Jr., "guilty of the sale of marijuana as charged in the information." RSMo 1959, §§ 195.010(5) (17), 195.020, V.A.M.S. Originally by an indictment filed on April 8, 1966, Rice was charged with having sold 54.917 grams of marijuana to *Keith Fieger* on September 8, 1965. In substitute informations, one on May 18, 1966, and the other on October 3, 1966, (the latter two days prior to the trial on October 5, 1966), a prior felony conviction (RSMo 1959 Supp. § 556.280, V.A.M.S.), larceny from the person was charged. (Upon the trial of the cause the court found the prior felony conviction and fixed the appellant's punishment at eight years' imprisonment.) In the second amended information, October 3, 1966, it was charged that on September 8, 1965, Rice sold 54.917 grams of marijuana to *Maurice Herron.* On October 5, 1966, after the empaneling of the jury but before the offering of any evidence, defendant's counsel objected that as to the change of names of the purchaser the latter information violated the defendant's rights under the state and federal constitutions to be informed of the nature of the charge. Const. Mo. Art. I, Sec. 18, V.A.M.S. As to the amendment in both informations as to the prior offense as well as to the name of the purchaser counsel claimed that forcing him to trial on October 5, 1966, was unfair and, therefore, he said that the case should be "continued for a period of approximately two weeks for the defense to enable themselves to prepare a defense in accordance with this new information." After this objection the prosecuting attorney withdrew the second information and elected to go to trial on the first substitute information of May 18, 1966, which only added to the original charge Rice's prior conviction, leaving the name of the purchaser as Fieger. As to that particular amendment, the addition of the prior conviction, the case is governed by the recent narcotics case of State v. Collins, Mo., 383 S.W.2d 747, 750; "The substituted information only alleged facts making the habitual criminal statute applicable in determining the punishment and this did not charge an offense different from the original indictment, as defendant erroneously claims." In this posture and in the particular circumstances noted hereinafter the appeal is not necessarily concerned with whether the amendment as to the name of the purchaser of the marijuana infringes the appellant's right to be informed of the offense charged. The amendment as to the prior offense did not standing alone entitle the appellant to a continuance: "No amendment of the information or substitution of an information for an indictment as herein provided shall cause a delay of the trial unless the defendant shall satisfy the court that such amendment or substitution has made it necessary that he have additional time in which to prepare his defense." RSMo 1959, § 545.300, V.A.M.S.; Criminal Rules 24.02, 24.03, V.A.M.R.

In brief these are the facts insofar as they relate to the substantive offense:

On the afternoon of September 8, 1965, Maurice Danny Herron, an informer, called his old friend Rice on the telephone "and I told him that my friend from K. U. that I had made a purchase from (for) him the week before wanted to make another purchase of marijuana, two cans, and I asked him how much would it be; and he told me he could sell me two cans for seventy dollars, and I told him that I would meet him later on that night when the guy came in from Lawrence." Herron then called federal narcotics agent Fieger and told him that he had made arrangements for "another purchase for him." Herron met Fieger and agent Wilkie (who provided surveillance) at a parking lot at 31st and Florence in Kansas City, the agents there searched Herron and his automobile for narcotics and marijuana and money and Fieger and Herron proceeded to the home of Rice's parents at 26th Street and Walrond. Herron sounded the horn on his automobile and when Rice came out sat in the rear seat of the automobile and Herron introduced Fieger as "my friend from K. U." as the "fellow that I had made the previous purchase for." Fieger complained of the amount of marijuana in the prior sale as well as of the price but Rice said "that's the price stuff is in Kansas City, and you got a fair shake, I gave you a fair amount for your money." At this point Rice complained of the traffic at 26th and Walrond and so they drove to Lockridge and Benton and parked. There Rice got out of the automobile and motioned to Herron to come to the back of the car where Fieger could not hear their conversation. But Herron walked up to the automobile and asked Fieger for the money but Fieger said he wanted to talk to Rice and "they bickered a few minutes about price. Keith (Fieger) was trying to get him to sell for $50 and he maintained the price of $70, so Keith counted out $70 and he started to hand it to Rice and Rice walked away and told me to take the money." Fieger gave Herron $70 (marked bills) and as Herron and Rice walked away Rice handed him the $70 and they walked to a liquor store at 27th and Benton where Rice changed the twenty and ten dollar bills into bills of other denominations. Rice walked on home telling Herron "to go back to my car and get Keith and come back to his house and he would show me where the stuff was." Herron and Fieger returned to the Rice residence, Herron "blinked my lights," Rice "came out and pointed to a package laying over in the weeds by the corner of the garage." Herron picked up the package, wrapped in a newspaper, and after another conversation between Fieger and Rice, the agents and Herron returned to the parking lot where the agents took charge of the package. It is obvious from this brief recitation of the testimony that the state established and the jury could reasonably find the appellant's guilt as charged. State v. Collins, supra; State v. Taylor, Mo., 391 S.W.2d 835.

█ Upon the trial and in the motion for a new trial there were objections to the packages, wrappers and marijuana, the claim being that "the chain of custody * * was broken." Independently of the exhibits there was testimony that the packages contained marijuana and that indirectly the appellant sold the packages to Fieger and it is not necessary to consider this assignment of error.

██ As a matter of fact the meritorious question briefed and argued is whether the court erred in refusing the appellant's instruction A submitting as a necessary part of the law of the case entrapment. State v. Decker, 321 Mo. 1163, 1170, 14 S.W.2d 617, 620. As others have noted it is difficult to state, even envisage, an all-embracing definition and rule of entrapment, each case of necessity must be limited to its particular circumstances bearing in mind that in this field there is "a distinction between entrapment in the literal sense and unlawful entrapment." 33 A.L.R.2d 883, 884, "Entrapment to commit offense with respect to narcotics law." The circumstances surrounding this particular transaction have been detailed, in addition to Herron's being an informer hoping to avoid

the penitentiary the other circumstance necessary to complete the picture is the fact that Herron and the appellant "Skip" Rice were old friends, "teenagers" together. As Herron said, "a buy was made on me by an informant" and he began "to set people up" for arrest by narcotic agents receiving, he claimed, "only expenses. * * * Carfare and cab fare and things like that, gas money." The record here permits inferences that would distinguish this case from State v. Decker, supra, in which "the scheme of manufacturing whiskey originated in the mind of Ousley" (the informer). There the record plainly supported the inference "that Ousley arranged, prepared and planted the barrel of mash. There is no doubt from defendant's evidence that Ousley furnished the cream can, the sugar, and the worm, and lured defendant into a situation that connected him with the still. * * * He not only served as a decoy, but he made the preparations and *furnished the equipment, and actually engaged in the manufacture of whiskey* * * *." (Emphasis added.) And in these circumstances the court erred in not instructing the jury as a part of the law of the case on entrapment. Upon this record a jury could find that Herron was, strictly speaking, an informer or decoy, both he and Fieger said that the "idea" of calling Rice originated with Herron and, of course, there had been a prior "buy" from Rice. The mere fact that Herron and Rice had been teenagers together, supposed friends, is only a circumstance bearing more on credibility than substantive law—in State v. Varnon, Mo., 174 S.W.2d 146, 147, the informer (Creacy) "testified he was a friend of appellant's and thought he could make a buy on account of the friendship." Here, among other factors, the jury could find from Rice's conduct a prior course of dealing, a design and willingness to make this particular sale as " 'evinced by ready complaisance.' " United States v. Perkins, 7 Cir., 190 F.2d 49, 53. This record is distinguishable from that in the first Taylor case, State v. Taylor, Mo., 375 S.W.2d 58, 61, in that there "(f)rom the evidence of entrapment favorable to

defendant the jury could have found that the narcotics agent did not have reasonable cause to suspect that defendant was an actual or potential violator of the narcotics laws; that defendant did not have a predisposition or criminal intent to violate these laws; that Snokhaus' [agent] actions were not those of an enforcement officer merely offering to one who was willing and waiting and already engaged in the illicit traffic, an opportunity to commit an offense. The jury had a right to find that the government agent initiated the idea of purchasing the narcotics; that the crime was the 'product of the creative activity' of Snokhaus, that the intention to commit this crime did not originate in the mind of defendant but was planted there by the agent, who, through misrepresentation and deceit, imposition, persistent and repeated solicitation, inducement and promises of money consideration to one in reduced financial circumstances, finally engineered defendant's participation. in criminal activity which but for the pressures applied would never have been undertaken by him." The Taylor case on its particular facts is but illustrative of the corollary of the general rule. 33 A.L.R.2d 1. c. 890. While not determinative (State v. Wright, 352 Mo. 66, 74–75, 175 S.W.2d 866, 871–872), the defendant in this case did not testify and offered no evidence, (see 61 A.L.R.2d 677 "Availability of defense of entrapment where accused denies participating at all in offense") and, of course had the court instructed on the subject of entrapment there would have been no possibility of prejudicial error. The court's discussion of the subject of entrapment in Kansas City v. Martin, Mo.App., 369 S.W.2d 602, was beside the point for the reason stated in the opinion "No allegation of the error is contained in defendant's motion for a new trial. Consequently she has waived it."

For the reasons indicated in this particular case the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.