STATE of Missouri, Respondent,

v.

Robert BOXLEY, Appellant.

No. 57323.

Supreme Court of Missouri,
Division No. 2.

July 16, 1973.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for respondent.

John P. Haley, Jr., Kansas City, for appellant.

HOUSER, Commissioner.

Robert Boxley appeals from a judgment of conviction and 10-year sentence for selling lysergic acid diethylamide, a hallucinogenic drug, §§ 195.010, 195.020 and 195.200, RSMo 1969, V.A.M.S. We have jurisdiction, the notice of appeal having been filed prior to January 1, 1972. Mo.Const. Art. V, §§ 3, 31, V.A.M.S.

Appellant testified as a witness in his own behalf. On cross-examination the prosecuting attorney was permitted over objection to elicit that in 1965 in federal district court in Fort Smith, Arkansas appellant was convicted of transporting a stolen vehicle across state lines, for which he received a 30-month sentence; that "a long time back," in Jackson County, Missouri Circuit Court, appellant was convicted of riding in a stolen car; that he was placed on probation, later revoked when he was found riding in his father's car in which a pistol was found; that he served 6 months' time following the revocation; "and Juvenile, that's it."

■ Appellant's first point is that the court erred in overruling his objection and permitting the prosecuting attorney to question him at length with reference to the details of his prior arrest record after appellant had admitted conviction of a crime. This point is without merit. The prosecutor did not elicit or attempt to elicit any details or incidents of the crimes or of the "Juvenile" experience other than as above recited. Nor did the cross-examination demonstrate conviction of crime showing a pattern of conduct, modus operandi, identity with or similarity to the drug charge for which he was being tried, from which it might have been argued that the facts elicited tended to prove guilt in this case. In these respects State v. Scott, 459 S.W.2d 321 (Mo.1970), cited by appellant, may be distinguished. There was no error under State v. Scott, and the trial court's ruling is approved under State v. Washington, 383 S.W.2d 518, 523 [8–10] (Mo. 1964); State v. Hood, 313 S.W.2d 661, 663–664 [4] (Mo.1958), and State v. McBride, 231 S.W. 592, 593 [3] (Mo.1921).

■ Appellant, having failed to convince the jury on the submitted defense of entrapment, now claims entrapment as a matter of law. "Entrapment as a matter of law is not established where there is any substantial evidence from which it may be inferred that the intention to commit the crime originated in the mind of the accused, 22 C.J.S. Criminal Law § 45(2), p. 141, or, as stated in United States v. Haden, 7 Cir., 397 F.2d 460, 466, ' * * * unless it is patently clear from the undisputed evidence that government agents originated the criminal design and implanted in the mind of an innocent person the disposition to commit the crime.' " State v. Davis, 450 S.W.2d 168, 171 [5] (Mo.1970).

The State's evidence tended to show the following: A cooperating individual informed the Kansas City Police Department that an individual by the name of Bob on East 32nd Street dealt in LSD. Robert Ingram, the federal narcotics agent, and the cooperating individual (a private citizen), went to appellant's apartment, where Ingram was introduced to appellant as an individual interested in purchasing LSD. Appellant asked Ingram how much he wanted. Ingram stated he only had $50. Appellant said the acid he handled was $1.-50 a tablet and that he would not sell less than a hundred tablets at a time. Ingram tried to make a $50 purchase but appellant refused. Ingram left, first explaining that it would take him a day or two to raise the extra $100 and if he could raise it he would return and see appellant later. Appellant said, "All right."

This first meeting between Ingram and appellant had been arranged by the cooperating individual. Ingram and the cooperating individual returned to appellant's apartment two days after the first meeting. Ingram stated that he wanted 100 LSD tablets. Appellant advised Ingram that the cost would be $150 and that he would have to go over and pick them up at 43rd and Harrison. The cooperating individual offered to provide transportation. The three men drove to the intersection mentioned. At appellant's direction the car was parked on the northeast corner of the intersection. Appellant then asked Ingram for the $150. Ingram asked to accompany appellant, stating that he did not want to give appellant the money before receiving the LSD. Appellant said no, that Ingram could not go with him. Asked what kind of LSD it would be, appellant answered that there were all kinds; that it would be "orange barrels" (small orange-colored LSD tablets that are flat on one end and look like little barrels). Ingram gave appellant the money. Appellant walked south on Harrison, then west on 43rd Street out of Ingram's

view. Ten minutes later appellant rejoined the men waiting in the automobile, and handed Ingram a clear polyethylene bag containing a quantity of orange barrels. Ingram opened the bag and counted them. During this process appellant assured Ingram that it was "heavy acid." On the return trip appellant told the other two men that Tony (his source of supply) had 200 more orange barrels; that they got their stuff out of California; that Tony's partner was in California at the time buying more LSD, which they would sell when Tony returned, after the 200 barrels now on hand were sold. Ingram assured appellant that he was interested in future purchases. Appellant responded that he was interested in Ingram's future purchases.

At no time before the first meeting with appellant, or between the first and second meetings with him, did Ingram contact appellant personally, by telephone, or otherwise. Ingram's stated purpose in making the first trip to appellant's residence was to provide appellant with the opportunity to sell LSD to Ingram.

From this evidence, paraphrasing State v. Davis, supra, 450 S.W.2d 1. c. 171, "the jury could infer that appellant had a predisposition toward criminality; that he had the criminal intent to traffic in unlawful drugs; that the crime originated in the mind of appellant; that the crime was not the creative activity of [Ingram] but that [Ingram] merely afforded appellant an opportunity to commit the criminal act. This 'is a far cry from [unlawful] entrapment,' Osborn v. United States, 385 U.S. 323, 332, 87 S.Ct. 429, 17 L.Ed.2d 394, reh. den., 386 U.S. 938, 87 S.Ct. 951, 17 L.Ed.2d 813; Taylor v. United States, 8 Cir., 390 F.2d 278, 283 [6], cert. den., 393 U.S. 869, 89 S.Ct. 155, 21 L.Ed.2d 137, and does not constitute entrapment as a matter of law." (Our brackets.)

Appellant attacks the instruction given to the jury on the subject of entrapment.

**132**

Appellant offered Instruction No. A, which was refused. The State offered Instruction No. 4, which was given. We align the two side by side for comparison.

### Instruction No. 4

One of the issues in this case, on which the State has the burden of proof, is whether the defendant was unlawfully entrapped into committing the offense submitted in Instruction No. 3. Even if you find and believe from the evidence beyond a reasonable doubt that the defendant engaged in the conduct submitted in Instruction No. 3, nevertheless you are instructed that unless you also find and believe from the evidence beyond a reasonable doubt:

First, that the defendant was ready and willing to engage in the conduct, and

Second, that the officer only provided the defendant with the opportunity to engage in the conduct,

you must find the defendant not guilty.

However, if you find and believe from the evidence beyond a reasonable doubt that the defendant committed the offense submitted in Instruction No. 3 and that he was not unlawfully entrapped into doing so as submitted above, then you will find the defendant guilty of the offense of Sale of Hallucinogenic Drugs.

### Instruction No. A

One of the issues in this case, on which the State has the burden of proof, is whether the defendant was unlawfully entrapped into committing the offense submitted in Instruction No. ___. Even if you find and believe from the evidence beyond a reasonable doubt that the defendant engaged in the conduct submitted in Instruction No. ___, nevertheless if you further find and believe from the evidence:

First, that the defendant was not ready and willing to engage in such conduct, and

Second, that the officer induced him to do so, and

Third, that he would not have done so except for such inducement, then you must acquit the defendant.

However, if you find and believe from the evidence
that the defendant committed the offense submitted in Instruction No. ── and that he was not unlawfully entrapped into doing so as submitted above, then you will find the defendant guilty of the offense of _____.

---

Appellant's stated complaint is that the instruction given "misled the jury with respect to lawful or unlawful entrapment, neither of which was defined." Instruction No. 4 is not misleading in the respect urged. There was entrapment in fact. Entrapment may be lawful or unlawful, depending upon whether the criminal intent originates in the mind of the defendant or in the mind of the law enforcement officer, and whether the officer merely afforded an opportunity for the commission of the crime or whether the officer incited and by persuasion, misrepresentation, coercion, etc. lured the defendant into commission of the crime. While Instruction No. 4 is no model, it is sufficient to present the alternatives of lawful and unlawful entrapment to the jury, without further definition. In effect Instruction No. 4 properly instructed the jury that a person who sells drugs is not unlawfully entrapped where the officer merely presents an opportunity to an already criminally inclined person to

make the sale. The term "unlawfully entrapped" as used in Instruction No. 4 connotes and defines the antithesis of "lawful entrapment." Cross v. United States, 8 Cir., 347 F.2d 327, 331 [8] (1965). If appellant wanted more explicit definition of lawful and unlawful entrapment he should have offered such an instruction.

■ Appellant contends that the court was compelled to give Instruction No. A, offered by appellant, because of evidence presented on his behalf to the effect that Ingram visited appellant and his wife, attempting to purchase LSD; that not content with appellant's statement that he did not "mess" with LSD and did not want to get involved, Ingram made numerous telephone calls, "bugging" appellant and his wife, until finally appellant procured some drugs for Ingram, in order to "get rid" of him. Instruction No. A in substance merely states affirmatively what Instruction No. 4 states negatively, and the Court, having given the negative version, was not compelled to give the affirmative version of the law of entrapment.

■ In final argument counsel for both sides made the alternate choices open to the jury perfectly clear, that is, whether to believe that the officer merely provided a previously criminally inclined, methodical and calculating pusher with an opportunity to make an illegal sale of drugs, or whether the officer "bothered," "badgered," "hammered," "hounded" and "pressured" an innocent man into doing something he did not want to do. We do not and cannot find that this jury was misled.

Judgment affirmed.

STOCKARD, C., concurs.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

HENLEY, P. J., DONNELLY, C. J., and MEYER, Special Judge, concur.

MORGAN, J., not sitting.

FINCH, J., not a member of Division when cause was submitted.