STATE of Missouri, Respondent,

v.

John Joseph PEARSON, Appellant.

No. KCD 26790.

Missouri Court of Appeals,
Kansas City District.

Feb. 3, 1975.

John P. Haley, Jr., Kansas City, for appellant.

John C. Danforth, Atty. Gen., Philip M. Koppe, Asst. Atty. Gen., Jefferson City, for respondent.

Before WASSERSTROM, P. J., and SHANGLER and DIXON, JJ.

SHANGLER, Judge.

The appellant John Joseph Pearson was charged with illegal possession of the controlled substance, amphetamine sulfate, in violation of §§ 195.017 and 195.020, RSMo 1969, V.A.M.S. The jury found him guilty. He appeals from the conviction and ten-year sentence of imprisonment.

The jury could have found from the evidence that at about 1:00 a. m. on January 26, 1972, the Kansas City, Missouri Police Department received information that a certain package was in transit from California to Kansas City aboard Continental Airlines Flight 12 from Los Angeles. Detective Grasher went to the air freight office to await the arrival of the flight. The package which engaged his interest was addressed to: "W. Small, c/o John Pearson, 808 East 40th St., Kansas City, Missouri", and the sender was designated as "Vickie Crowl, 400 East 21st St., Long Beach, California." After observing that the package had arrived on Flight 12, Grasher instructed the airline employees not to call the telephone number on the package (which proved to be that of appellant's residence) until he returned. Detective Grasher obtained a search warrant and returned. Around 10 a. m. appellant arrived and claimed the package. Detective Grasher served him with the search warrant, opened the package, and found about 50 clear plastic bags, each containing 1000 or so double-scored white tablets. The officer suspected that the tablets were restricted drugs, so he arrested the appellant and advised him of his rights. Analysis proved that the tablets contained amphetamine sulfate.

In interrogation, the appellant denied that he knew anyone by the name of W. Small, but that he had only responded to the message of the airline to pick up the package, and was merely a messenger. He denied he knew anyone by the name of Vickie Crowl, or even anyone in California. However, during the routine booking procedure at the police station, the jailer found on his person an address booklet which contained the name of a Steven Scribner of 400 East 21st Street, Long Beach, California. At the trial, the appellant repudiated his prior statement and admitted that he had known Vickie Crowl and her husband, Steven Scribner, for three years and had earlier been with them in California. He continued to deny that he knew the contents of the package, or any knowledge of W. Small, whether man or woman, and asserted he had made no effort to get in touch with that person.

The appellant complains that the evidence was insufficient for conviction because there was no proof that he had conscious possession of the proscribed substance. It is clear that in order to prove a conviction of illegal possession under § 195.020, there must be proof, either directly or by inference, that the defendant had a conscious possession of the substance proscribed as contraband by that section. State v. Burns, 457 S.W.2d 721, 724[1, 2] (Mo.1970). In a case such as this, knowledge is rarely directly demonstrable but, rather, is ordinarily shown by the circumstances of the defendant's possession of the prohibited substance. State v. Scarlett, 486 S.W.2d 409, 410[1] (Mo.1972). In this case, there was substantial evidence from which the jury could find that appellant had guilty knowledge of what the package contained. In that determination, these facts are significant: After appellant was notified of the arrival of the package, he claimed it and although it was not addressed directly to him, he was carrying a cutting tool by which the package was opened. The package was addressed to a "W. Small", a person not known to appellant nor ever located—giving rise to the inference that the designation was both fictitious and for an illicit purpose. The package was consigned from an address listed in a booklet he kept and by a person, Vickie Crowl, he admitted knowing. See, State v. Burns, supra, 457 S.W.2d 1. c. 725[4]. The jury could have inferred guilty knowledge required by the statute

from his attempt to avoid detection, his denial of acquaintance with Vickie Crowl, or anyone else in California, statements which appellant later repudiated. "The requisite knowledge [of the presence of the substance] may also be proved by the physical appearance of accused, and his declarations, or admissions, and contradictory statements, and explanations, made by him." 28 C.J.S. Drugs and Narcotics § 204, p. 300.

 The appellant next complains that he was entitled to an instruction that it was the duty of the law enforcement officers to prevent, not encourage, crimes; thus, if the officers had knowledge that the package contained amphetamine sulfate and, with that knowledge, allowed the package to come into the possession of the appellant with their consent, the defendant should be discharged. This instruction grossly misconceived the law of entrapment and was properly rejected by the trial court. Entrapment occurs when the criminal intent originates with the governmental agent who lures the accused into the commission of the offense with which he is charged. State v. Decker, 321 Mo. 1163, 14 S.W.2d 617, 619[3, 4] (1929). In this case, there was no evidence that the criminal intent originated in the mind of the police officers; they merely permitted the criminal purpose of the appellant to unfold. State v. Burns, *supra,* 457 S.W.2d 1. c. 726[6].

The final contention of appellant is that the court assisted the prosecutor in the presentation of the case in such a manner as to create an impression before the jury of favor for the prosecutor at the expense of the appellant. The attorney in charge of the prosecution for the State was conducting his first jury trial. During the presentation of his first witness, Detective Grasher, the prosecutor brought into evidence the box which had contained the restricted drugs. The prosecutor then sought to have received in evidence a brown wrapper which was then in the box but which

Detective Grasher explained was the covering in which the box had been mailed. Counsel for appellant was granted leave to make inquiry and in response Detective Grasher explained that when he placed the box in the police property room, the wrapper was on it, but then had been removed and placed inside the box by the laboratory technician who examined for fingerprints. Thereupon, attorney for appellant objected to the exhibit as evidence for want of a proper foundation. The prosecutor insisted that the exhibit had already been received.

At this juncture, the court undertook to ask the witness a number of questions concerning his identification of the wrapper, overruled the objection to the exhibit,. but withdrew the ruling to permit defense counsel to pose additional qualifying questions. This colloquy between the witness and the court and defense counsel followed:

MR. SPOONER: You did put your initials on this particular paper?

THE WITNESS: Yes, sir; I did. I haven't found them yet. I will find them eventually.

THE COURT: Would that be on just one item of the wrapping that was torn off?

THE WITNESS: It would be on a piece of paper that was torn off. I put it on the package as well as on the paper here. It is a possibility they have faded. There is writing on here that is very illegible. There are some markings but I can't tell whether it is my initials or not, because this coating they put on here—

THE COURT: What do you mean by that?

THE WITNESS: The finger print technician uses a coating they put on the paper itself that extracts the latent finger prints or makes them stand out, this red coating they use.

MR. McFADIN [Defense Counsel]: May I ask a preliminary question for the purpose of an objection?

THE COURT: Yes.

MR. McFADIN: Officer, you have this paper that seems to be in a number of different pieces. Do you have any evidence or any way of knowing that these pieces all belong to one entire piece of wrapping? Was this torn up like this when you had possession of this box?

THE WITNESS: It was torn to a certain extent. I won't say it was torn to that extremity.

MR. McFADIN: It was not mutilated like this?

THE WITNESS: Not to that extreme.

MR. McFADIN: Can you tell us these pieces are all one and the same—I notice there is different coloration. Can you positively say that all these constitute the wrapping paper?

THE WITNESS: Yes, I would say this, because this is the procedure. When this property goes into the property room, regardless of what parts are torn off, it is generally put—I mean it is always put right back in the box.

MR. McFADIN: You just testified your initials appear on only one piece?

THE WITNESS: On one piece. I wouldn't write all over the paper, in other words.

MR. McFADIN: We object. They have mutilated this paper so badly, and this discoloration. I don't know how in the world it could ever be considered as one and the same wrapping paper.

THE COURT: We will have that objection in mind and allow the officer to search further and find the initials.

THE WITNESS: I can find some initials on here, sir but they don't look like mine. It is possibly—

THE COURT: Don't get into possibilities.

THE WITNESS: It could have faded. I am going to say possibly it has faded out. There are some markings on here, but I can't make them out. I cannot identify them as my initials.

THE COURT: Can you say with absolute certainty that these pieces of paper were the wrapping on the box when you got it off Flight 12?

THE WITNESS: By looking at these labels, yes, sir, I can.

THE COURT: You are looking at the top label part of it, with the stamps on it, is that right?

THE WITNESS: I am looking at the top, on top of the package. This was on top of that package, and this is the item removed from Flight 12 that I obtained a search warrant for.

THE COURT: Are your initials on that one?

THE WITNESS: I don't see them here.

THE COURT: But you do know it is the same?

THE WITNESS: It is the same, yes, sir.

THE COURT: You can't say that about all those little pieces of paper for certain, can you?

THE WITNESS: No; but I can say it about this piece right here.

THE COURT: Mrs. Goff, take that and mark it as another exhibit. It was in the box, and I didn't know about it.

The reporter marks a certain piece of paper as STATE'S EXHIBIT 2–A.

Counsel approached the bench, and the following proceedings were had out of the hearing of the jury:

MR. MURPHY [Prosecutor]: The state offers State's Exhibit 2–A.

MR. McFADIN: We object to that as still a proper foundation had not been laid. He can't find his initials on the paper. It has been mutilated. It was inside the box. He never has laid a proper foundation that the box and the paper were one and the same.

THE COURT: He identified it by the address and so on on it. Objection overruled. Mr. McFadin and Mr. Spooner, I don't know whether I gave you the benefit of my knowledge that this is Mr. Murphy's first case, and we now have a Supreme Court rule that says courts will be patient. I don't want to lean over backwards, but this is the reason. The Court normally asks no questions, Mr. Murphy. This is no reflection of what you have done to date. You just stay in there and pitch.

The proceedings returned to open court.

■ It is a recognized power of the trial court to propound additional questions to a witness to clarify the testimony given to the end that the truth may more fully appear. State v. Cook, 440 S.W.2d 461, 464[5, 6] (Mo.1969). In the discharge of this supervisory power, the trial court owes impartiality of expression and conduct so that the accused will not be prejudiced before the jury. State v. Tate, 468 S.W.2d 646, 648[1–3] (Mo.1971). In the absence of a showing that the interrogation constituted an abuse of discretion, the trial court will not be convicted of prejudicial error. State v. Grant, 394 S.W.2d 285, 287[1, 2] (Mo.1965).

■ The record before us discloses a wholly appropriate intervention by the trial court to clarify obscurities concerning the identification of an exhibit. The conduct of the court in no manner disparaged the accused, nor did it express favor for the prosecution. Rather, the imbroglio which the trial judge undertook to unravel was brought about by the inexperience of a prosecutor who was presenting his first case, and the ends of justice were well served by the judicial intervention which ensued. It is to be noted that the specific show of favor by the court for the prosecutor which appellant alleges as prejudicial error was the remark by the court:

[T]his is Mr. Murphy's first case and we now have the Supreme Court rule that says courts will be patient. I don't want to lean over backwards, but this is the reason. The Court normally asks no questions, Mr. Murphy. This is no reflection of what you have done to date. You just stay in there and pitch.

■ These remarks, however, were addressed to counsel at the bench outside the hearing of the jury and could not have impaired the neutrality the court owed the defendant nor resulted in the prejudice he now claims.

The judgment is affirmed.

All concur.