STATE of Missouri, Plaintiff-Respondent,

v.

Ramon DEVINE, Defendant-Appellant.

No. 37778.

Missouri Court of Appeals,
St. Louis District,
Division Three.

May 24, 1977.

Motion for Rehearing and/or Transfer
Denied July 21, 1977.

Application to Transfer Denied
Sept. 12, 1977.

Bruere & Rollings, Dale L. Rollings, Thomas J. Barklage, St. Charles, for defendant-appellant.

John D. Ashcroft, Atty. Gen., Philip M. Koppe, Asst. Atty. Gen., Jefferson City, Joel Eisenstein, Asst. Pros. Atty., St. Charles County, St. Charles, for plaintiff-respondent.

GUNN, Judge.

Defendant-appellant was charged in an amended information with selling pentobarbital, a Schedule II controlled substance, in violation of § 195.020 RSMo 1969. A jury found him guilty and set his sentence at five years imprisonment. Judgment and sentence were entered in accordance with the jury verdict. On appeal, defendant raises a multitude of allegations of error, including illegal entrapment. As we find as a matter of law that defendant was improperly entrapped into committing the offense charged, we discuss only that issue.

■ Before reaching the merits of the appeal we rule on the State's alternate motion to dismiss defendant's appeal or strike his brief. The State attacks defendant's brief on the ground that it fails to contain a fair and concise statement of facts as required by Rule 84.04(c).[1] The State contends that defendant's statement of facts is fatally defective in that it fails to recite the evidence adduced by the State in its case in chief. The State's evidence consisted of the testimony of the police officers involved in the sale made by defendant and testimony of two criminologists as to the nature of the substance sold. Although defendant's statement of facts does not detail this testimony, it does contain the admission that the defendant did in fact make the sale. While defendant's statement of facts perhaps should have contained more of the State's evidence, we believe it sufficient for the purposes of this appeal, as the basic purpose of the State's evidence was to establish the fact that defendant made a sale of the controlled substance, pentobarbital, as admitted in defendant's statement. We therefore overrule the State's motion.

■ On appeal, defendant centers his attack on the issue of entrapment. He contends that judgment of acquittal should have been entered at the close of the evidence, as the State failed to produce any evidence rebutting the substantial proof of entrapment introduced in defendant's case. The issue, then, for us to decide is whether the State is obligated to produce rebuttal evidence to the defendant's substantial evidence that he was entrapped into making the sale. We find that the existing Missouri authority obligates the State to present such evidence, and we reverse the judgment.

Aside from the chemical analysis of the controlled substance, the State's evidence consisted of the testimony of three undercover police officers, Bishop, Panhorst and Magrew, who participated in the arrest of the defendant. Officer Panhorst testified that on October 24, 1974, he spoke on the telephone with an informant, Vickie Perkins, who informed him that a purchase of drugs could be made the following day at the Orchard Farm School District in St. Charles County.[2] The three officers agreed that the information from Ms. Perkins pertained to a person other than the defendant. Pursuant to the "tip," the officers arrived at the school at 1 o'clock in the afternoon on October 25 and were met by Vickie Perkins. They learned from her for the first time that a purchase could be made from the defendant.[3] The officers had not known of the defendant prior to October 25, and Officer Panhorst testified that Vickie Perkins was their only source of information concerning the defendant. Officer Bishop, who actually made the purchase, related how the sale transpired. At

1. Rule 84.04 is made applicable to criminal cases by Rule 28.18.

2. Officer Panhorst testified that he had been acquainted with Vickie Perkins for one and a half years and that all contacts he had had with her over this period were related to police matters. He also testified that he had acted on tips supplied by her in the past.

3. Officers Bishop and Panhorst were in disagreement as to which of them received the information from Perkins that a purchase could be made from the defendant. Officer Bishop testified that it was Officer Panhorst who had received this information from the informant. Officer Panhorst stated that he had not received the information from Perkins. He testified that he learned that a purchase could be made from the defendant from Bishop and that Bishop had obtained the information from Perkins.

3 o'clock, the defendant approached the front door of the high school building. Vickie Perkins, who was standing near the front door, notified Bishop that the defendant was coming. Officer Bishop then went out the front door and met with the defendant. Bishop was dressed as a janitor, and the defendant was unaware of the fact that he was a police officer. When the defendant asked Bishop if he was the person interested in purchasing drugs, the officer answered affirmatively, and the two men proceeded to the defendant's car. Officer Bishop asked to see the drugs. The defendant went to the trunk of his car and took out a red towel. He then entered the car on the driver's side and produced a brown bottle wrapped in the towel. Officer Bishop examined the contents and asked how much the defendant wanted for the bottle. The defendant replied that he did not know and asked the officer what would be a fair price. Officer Bishop offered $100, which was accepted by the defendant. The money was given to the defendant and he in turn gave the bottle to the officer. The defendant was then placed under arrest. Officers Panhorst and Magrew, who were observing the transaction, were unable to overhear the conversation between Bishop and the defendant but did corroborate Bishop's testimony concerning the movements of the two men.[4] The State's case was rested after the calling of two witnesses who established chain of custody and that the bottle contained pentobarbital.

The defendant testified on his own behalf. At the time of his arrest, the defendant was employed by the Orchard Farm School District as a school bus mechanic. He also had a farm on which he stabled and boarded horses under his care. In the latter part of September, 1974, he became acquainted with Vickie Perkins, who worked at the school district in a janitorial position. During the last week in September or first week in October, while talking with fellow employees about a recent drug raid that had taken place at the school, the defendant mentioned that he had a bottle of "phenobarbital"[5] at home that he used to put horses asleep. This comment was overheard by Vickie Perkins, who immediately began to show an interest in purchasing the bottle of pills from the defendant. He refused to sell, telling her that he had "never thought about getting rid of them that way." Over the next few weeks leading up to October 25, Ms. Perkins made numerous and persistent attempts to get the defendant to sell the bottle of pills. The defendant stated that she approached him on at least ten different occasions during that period and that he continually rejected her requests to sell to her. Ms. Perkins mentioned price for the first time during her eighth attempt to convince the defendant to sell. The initial offer was for $10, which was then raised to $14, and subsequently, on October 25, Ms. Perkins drastically increased the offer to $100. The offer was made at 2:15 in the afternoon. The defendant finally succumbed and drove home to obtain the bottle of pills. When asked why he finally gave in and agreed to sell the pills, the defendant replied: "Well, a hundred dollars is a lot of money. I know it's stupid, but it is a lot of money, and I only get paid once a month and I needed the money." The defendant testified that all the conversations with Ms. Perkins concerning the sale of his bottle of pills were initiated by her and that until October 25, he steadfastly refused to sell. Defendant's testimony was positively corroborated by Stephen Mersman, who was a mechanic's helper at the Orchard Farm School District. Mersman testified that on approximately four different occasions, he overheard the

4. The defendant's version of what transpired differed from the officers' account. The defendant testified that he arrived in his car and Vickie Perkins informed him that the purchaser would be there in a minute. Officer Bishop then appeared and came over to the defendant's car. (The defendant stated he never got out of his car). Bishop asked if he had the

pills. The defendant held up the pills, and Officer Bishop then walked back to the school. He soon returned with the money. The money and bottle then exchanged hands, and the defendant was placed under arrest.

5. The bottle actually contained pentobarbital.

defendant and Ms. Perkins discuss the sale of the pills. Mr. Mersman stated that these conversations were all initiated by Vickie Perkins and that he heard the defendant refuse to sell during each conversation. The defendant also testified that during their discussions, Ms. Perkins had stated that the pills were to go to a janitor who had been burned and was taking phenobarbital to ease the pain.[6]

The defendant testified that he had the bottle of pills in his possession for seven years[7] and kept it in a medicine cabinet in his barn for the purpose of putting injured or ailing horses to sleep. The defendant called two witnesses who corroborated the fact that he kept the pills for such purpose and that it was common practice to dispose of horses in such manner. The defendant also testified that he had never been arrested or charged with a crime in the past. Several witnesses testified on his behalf as to his good reputation in the community.

Based upon the above evidence the defendant contends that he was entitled to judgment of acquittal. He claims that his evidence establishes entrapment; that the State failed to rebut his proof; and that, therefore, the State failed to make a submissible case. We believe defendant's analysis is correct.

■ Missouri follows the "origin of intent" test in determining the issue of entrapment. This test was articulated in the leading case of *State v. Decker*, 321 Mo. 1163, 14 S.W.2d 617 (1929):

"Where the criminal intent originates in the mind of the defendant on trial, and the offense is accomplished, it constitutes no defense that an opportunity is furnished, or that an officer aids the accused in the commission of the crime, in order to obtain evidence upon which to prosecute him. But where the criminal intent originates in the mind of the entrapper,

and the accused is lured into the commission of the offense charged, in order to prosecute him therefor, it is the general rule that no conviction may be had, though the criminality of the act is not affected by any question of consent." *Id.*, 14 S.W.2d at 619–20.

See also *State v. Taylor*, 375 S.W.2d 58 (Mo.1964); *State v. Long*, 550 S.W.2d 854 (1977); *State v. Pearson*, 519 S.W.2d 354 (Mo.App.1975); *State v. Admire*, 495 S.W.2d 132 (Mo.App.1973). See also Comments, Entrapment: A Critical Discussion, 37 Mo.L.Rev. 633 (1972), for a detailed discussion on the law of entrapment as it exists in Missouri.

The State concedes that the defendant's testimony, corroborated by Stephen Mersman, concerning Vickie Perkins' constant solicitation of the defendant constituted sufficient evidence of entrapment, and that, therefore, the jury was properly given an instruction on the defendant's entrapment defense. The fact that Vickie Perkins aggressively sought to have the defendant commit the crime, when coupled with the other circumstances in this case, including the defendant's steadfast refusal to sell, his prior unblemished record as to arrests, and his overall good reputation in the community, constitute ample evidence of entrapment. See e. g. *Sherman v. United States*, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958); *Sorrells v. United States*, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932); *State v. Taylor*, supra; *State v. Decker*, supra; Annot., 33 A.L.R.2d 883 (1954).

In *Sherman v. United States*, supra, the United States Supreme Court held that the defendant had been entrapped as a matter of law into selling narcotics. The evidence of entrapment came from the uncontradicted testimony of the government informer who purchased the drugs from the defendant. His testimony revealed that he met the defendant by chance at a doctor's office

---

6. On cross-examination, the defendant again asserted that he thought Vickie Perkins wanted him to sell the drugs to the injured janitor. He stated that he knew the injured man, yet he sold the drugs to Officer Bishop, not knowing who he was.

7. This testimony was substantially corroborated by the State's chemist who stated that the bottle appeared to be about 5 years old.

where both were undergoing treatment to be cured of drug addiction. An acquaintanceship developed, and, finally, the informer asked the defendant for a source of drugs, indicating that he was not responding to treatment. The defendant rejected the request. The informer made several more requests, predicated upon his suffering, before the defendant finally agreed to obtain drugs. After several sales, the informer alerted federal agents, who observed the defendant sell narcotics to the informer and arrested him. The court held that it was patently clear that the informer induced the defendant to break the law. "One request was not enough, for [the informer] tells us that additional ones were necessary to overcome, first, petitioner's refusal, then his evasiveness, and then his hesitancy in order to achieve capitulation." *Id.*, 356 U.S. at 373, 78 S.Ct. at 821. The court also noted that the fact that the entrapper was an informer initially acting on his own, would not deprive the defendant of his entrapment defense. "The Government cannot disown [the informer] and insist it is not responsible for his actions. Although he was not being paid, [the informer] was an active government informer who had but recently been the instigator of at least two other prosecutions. . . . The Government cannot make such use of an informer and then claim disassociation through ignorance." *Id.*, 356 U.S. at 373–74, 78 S.Ct. at 821.

Although the law of entrapment has developed independently in Missouri, *State v. Weinzerl*, 495 S.W.2d 137 (Mo.App.1973), the *Sherman* decision is followed by Missouri courts. See e. g. *State v. Golightly*, 495 S.W.2d 746 (Mo.App.1973); *State v. Weinzerl*, supra.

▪ The defendant argues that the case should not have been submitted to the jury, as the evidence of entrapment was never contradicted by the State. The State counters by asserting that inasmuch as the evidence of entrapment came solely from the defendant, the jury could choose to

disbelieve the defendant; that being instructed on entrapment, the jury chose to disbelieve that he had been entrapped. Recent Missouri cases have clearly established the rule that when the defendant has presented substantial evidence of entrapment, the State must produce evidence to show the defendant's predisposition to commit the crime. Failure to do so subjects the State to the adverse direction of a judgment of acquittal. The leading case establishing this principle is *State v. Weinzerl*, supra. Relying on *State v. Decker*, supra, and *Kansas City v. Martin*, 369 S.W.2d 602 (Mo.App.1963), the court in *Weinzerl* stated that once substantial evidence of entrapment is introduced, non-entrapment becomes an element of the offense:

"Missouri law effectuates its purpose by establishing, once substantial evidence of entrapment appears, absence of entrapment as an additional element of the criminal offense: 'The law of the case comprehends the elements of the offense charged, *as shown by the evidence. Entrapment was one of the elements of the offense, for, if defendant was entrapped, he was not guilty.*' " *Id.*, at 142. (original emphasis).

The court further stated that if the State fails to rebut the inference of unlawful inducement, the defendant is entitled to a judgment of acquittal:

"[W]here substantial evidence of inducement by governmental agent appears, the procedural burden devolves upon the prosecution to rebut the inference of unlawful inducement by substantial evidence of the predisposition of defendant to commit the offense, in default of which, a jury issue of entrapment has not been made, and defendant, 'having established entrapment as a matter of law, is entitled to a judgment of acquittal'. *United States v. Groessel*, 440 F.2d 602, 606[11–13] (5th Cir. 1971); *Martinez v. United States*, 373 F.2d 810, 812[4–7] (10th Cir. 1967); *United States v. Haden*, 397 F.2d 460, 466[6, 7] (7th Cir. 1968)." *State v. Weinzerl*, supra at 141.[8]

8. This rule is consistent with the test of whether entrapment as a matter of law has been established as stated in *State v. Davis*, 450

This principle prevails even when evidence of entrapment comes solely from the defendant. The State cannot rest on an attack of the defendant's credibility: "[W]here the evidence of inducement comes from defendant, the prosecution cannot rest on a challenge to the credibility of defendant; it must come forward with some contradictory evidence or suffer the adverse direction of a judgment of acquittal." *Id.*, at 141.[9] See also *United States v. Bueno*, 447 F.2d 903 (5th Cir. 1971), in which the court said at 906: "The defendant having testified to facts which established a defense [of entrapment] as a matter of law, the government has the duty to come forward with contrary proof, if it is to carry its ultimate burden of proving guilt beyond all reasonable doubt." Several recent Missouri cases have reiterated the procedural burden of proof rule articulated in *State v. Weinzerl.* See e. g. *State v. Long*, supra; *State v. Admire*, supra.[10]

■ *State v. Keating*, 551 S.W.2d 589 (Mo. banc 1977), a case in which the State supplied the narcotic, reaffirms that the State must assume its burden of showing the defendant's predisposition to criminal activity if the entrapment issue is raised. In *Keating*, the State met its burden of showing predisposition—a fact not accomplished here. Thus, in *Keating*, Missouri continues to apply the "subjective test" on the entrapment issue, focusing on the origin of intent to commit the crime with emphasis on the predisposition of the accused. In so doing, the court specifically rejected the "objective test" of entrapment recited in

concurring opinions in *Sorrells v. United States*, supra, and *Sherman v. United States*, supra, and dissenting opinions in *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973), which concentrates on whether the police power utilized exceeds proper use of governmental power. *Keating* also notes that *Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976), reaffirms the subjective test.

■ Having already noted that the defendant produced substantial evidence of entrapment, we must now determine whether the State has carried its burden of proving an essential element of the offense—the predisposition of the defendant to commit the crime. The record is destitute of any evidence demonstrating that the defendant was ready and willing to engage in the criminal activity with the informant, see e. g. *State v. Day*, 506 S.W.2d 497 (Mo.App.1974), or that the government agents were merely affording him an opportunity to sell drugs. See e. g. *State v. Boxley*, 497 S.W.2d 129 (Mo.1973). The defendant's corroborated testimony, that he steadfastly refused to engage in the criminal activity, therefore stands uncontradicted. The fact that the defendant resisted a government agent's inducements is an important factor in establishing an entrapment defense. Compare *Sherman v. United States*, supra; and *Sorrells v. United States*, supra, with *United States v. Groessel*, 440 F.2d 602 (5th Cir. 1971). See also *State v. Weinzerl*, supra, where the

---

S.W.2d 168, 171 (Mo.1970):

> "Entrapment as a matter of law is not established where there is any substantial evidence from which it may be inferred that the intention to commit the crime originated in the mind of the accused, 22 C.J.S. Criminal Law § 45(2), p. 141, or, as stated in *United States v. Haden*, 7 Cir., 397 F.2d 460, 466 '. . . unless it is patently clear from the undisputed evidence that government agents originated the criminal design and implanted in the mind of an innocent person the disposition to commit the crime.' "

See also *State v. Boxley*, 497 S.W.2d 129 (Mo. 1973).

9. The United States Supreme Court, in the case of *Masciale v. United States*, 356 U.S. 386, 78

S.Ct. 827, 2 L.Ed.2d 859 (1958), reached the opposite conclusion. In *Masciale*, the court held that where uncontradicted evidence of entrapment comes solely from the defendant, the defendant is not entitled to a judgment of acquittal, as the jury could choose to disbelieve his evidence.

10. Both cases cite *Weinzerl's* rule that when evidence of entrapment is injected in the case, the State is obligated to rebut the entrapment evidence. However, both *State v. Long*, supra, and *State v. Admire*, supra, found that no substantial evidence of entrapment had been introduced.

court said at 143: "Solicitation will raise an issue of entrapment when it is coupled with a showing of reluctance or unreadiness on the part of the defendant to accept the solicitation."

Further, there is no evidence to show that the defendant was involved in the trafficking of narcotics as was the case in *State v. Hyde*, 532 S.W.2d 212 (Mo.App.1975), or that he was prone towards criminality as was the case in *State v. Davis*, supra. Furthermore, there was no evidence to show that the authorities had any reason to suspect that the defendant was dealing in narcotics. See e. g. *State v. Stock*, 463 S.W.2d 889 (Mo.1971); *State v. Taylor*, supra. In fact, the police officers participating in the arrest testified that they had never heard about the defendant until they arrived at the school on October 25. Absent evidence of the type found in the cases cited above, the State has completely failed to rebut the defendant's evidence of entrapment. The record remained uncontradicted that during the weeks preceding October 25, the defendant, who was essentially a law-abiding citizen with a good reputation in the community, was subjected to continual and persistent pressure from a government informant to engage in criminal activity. The defendant withstood the constant pressure until the offer became so attractive that he was no longer able to resist.[11] The evidence was uncontradicted that except for the pressure applied by Vickie Perkins, a government informant, the defendant would not have undertaken criminal activity.[12] See *State v. Taylor*, supra. Therefore, the defendant was entitled to judgment of acquittal. *State v. Weinzerl*, supra.

The conviction is reversed.

KELLY, P. J., and WEIER, J., concur.

11. Note that the fact that he acquiesced to the sale only when the offer rose to $100 does not adversely affect his entrapment defense. See *State v. Taylor*, supra.

12. The informant did not testify, and she could not be reached by defendant's subpoena. While an informant's testimony can be helpful to establish defendant's predisposition to com-

mit a crime, thus raising a fact issue of entrapment, it is not essential that an informant be called upon to establish such predisposition to engage in criminal activity. Predisposition may be established by other means. See e. g. *State v. Boxley*, supra; *State v. Stock*, supra; *State v. Taylor*, supra; *State v. Hyde*, supra; *State v. Day*, supra.